In re The INVESTMENT BANKERS, INC., Debtor.

James H. TURNER, SIPC Trustee, Plaintiff,

v.

DAVIS, GILLENWATER & LYNCH, et al, Defendants.

Bankruptcy No. 81 M 1203.
Proceeding No. 82 M 0087.

United States Bankruptcy Court, D. Colorado.

May 25, 1983.

Gorsuch, Kirgis, Campbell, Walker & Grover by Robert E. Warren, Jr., Denver, Colo., for plaintiff.

Tucker & Brown by C. Jean Smollett, Denver, Colo., for defendants.

JAY L. GUECK, Bankruptcy Judge.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on motions of both parties relating to certain discovery. The first matter concerns the Trustee's Motion to Compel Discovery with respect to giving depositions and to provide certain information which the defendants have refused to produce. The second matter involves the Trustee's Motion for Protective Orders pursuant to notice by defendant O'Connor and Hannan to take the deposition of Mr. Kenneth Hawkins, an investigator employed by the Trustee.

## TRUSTEE'S MOTION TO COMPEL DISCOVERY

On July 10, 1981, the Securities Investor Protection Corporation (SIPC) filed an application in the United States District Court for the District of Colorado seeking an adjudication that the customers of the debtor herein (The Investment Bankers, Inc.) (IBI), were in need of the protections available under the Securities Investor Protection Act, 15 U.S.C. § 78 (aaa, et seq.) (SIPC). Subsequently, a Trustee was appointed and the case was removed to this court, where the Trustee instituted this proceeding. The complaint herein seeks the return to the estate of $87,517.80 from attorneys who received checks from the debtor on July 10, 1981. The theory of relief is founded on 11 U.S.C. § 547, alleging a preference, and 11 U.S.C. § 548, alleging a fraudulent transfer.

SIPC deposed Mr. Davis, of Davis, Gillenwater & Lynch, on January 26, 1983. The Trustee deposed Mr. Berliner, of O'Connor and Hannan, on March 15, 1983. Both deponents refused to answer questions regarding their services and advice for which the alleged attorneys' fees were paid on July 10, 1981, by IBI. The basis upon which they refused to answer these questions was that such information is protected by the attorney-client privilege. Additionally, these defendants have refused to produce documents, asserting the same attorney-client privilege. Davis contends that since, in addition to representing IBI, he also represented certain individual principals of IBI (Belknap and Chandler), he cannot violate the attorney-client privilege even if the corporation waives that privilege, until such time as the individuals also waive that privilege. They have not yet done so. Davis also contends that he is entitled to claim for himself a Fifth Amendment privilege against self-incrimination.

In addition to the deposition of Mr. Berliner, the Trustee has scheduled the deposition of Mr. Gregg Kearns, formerly a partner of the firm of O'Connor and Hannan. This is for the same purpose as the depositions of Davis and Berliner.

O'Connor and Hannan has submitted summary documents in the form of time sheets, documents which indicate the number of hours spent and the general nature of legal services performed. The Trustee seeks to go beyond these summaries and to inquire into the nature of the legal services upon which the alleged fees were paid, when such services were rendered and for what purpose. Fees paid for legal work and the general nature of legal work performed do not constitute a confidential communication and are, therefore, outside the attorney-client privilege. *U.S. v. Hodgson*, 492 F.2d 1175 (10th Cir.1974); *U.S. v.*

*Osborn,* 409 F.Supp. 406 (D.C.Or.1975) reversed on other grounds at 561 F.2d 1334 (9th Cir.1977).

■ It is clear that the Trustee has wide latitude to obtain any facts pertaining to the bankrupt's conduct or property. *Brannan v. Gay,* 527 F.2d 799 (7th Cir.1976); *In re Ratmansky,* 7 B.R. 829 (Bkrtcy.Pa.1980).

■ Additionally, it is noted that the attack by the Trustee is on the attorneys' fees and the basis upon which such fees were incurred, including the advice given, the work accomplished and the results achieved. Accordingly, it is necessary that the attorneys come forward and defend their fees or surrender them. The Code of Professional Responsibility provides in DR 4–101(C)(4) that a lawyer may reveal "[c]onfidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associates against an accusation of wrongful conduct." In light of the issues raised by the Complaint this would appear to be dispositive. In any event, the documentary and testimonial evidence sought to be discovered appears to be reasonably calculated to lead to admissible evidence under F.R. C.P. 26(b)(1), unless a valid privilege attaches.

■ In this case, the Trustee seeks to waive the attorney-client privilege of the debtor so that he can investigate the facts surrounding payment of over $87,000.00 to these two law firms. A Trustee in bankruptcy succeeds to a debtor's right to assert or waive the attorney-client privilege. *In re OPM Leasing,* 670 F.2d 383 (2nd Cir. 1982); *Citibank v. Andros,* 666 F.2d 1192 (8th Cir.1981); *In re Smith,* 24 B.R. 3, (Bkrtcy.Fla.1982); *In re Amjoe, Inc.,* 11 CBC 45 (Bankr.Fla.1976). A case directly in point is *Citibank v. Andros, supra.* In that decision the Eighth Circuit Court of Appeals held that a Trustee in a Chapter 7 liquidation proceeding could waive the privilege. The Court stated as follows:

"Because the right to decide whether to waive a corporation's attorney-client privilege belongs to the management, the right to assert or waive the privilege

passes with the property of the corporate estate to the trustee." *Citibank, supra,* at page 1195.

The Court then held that this determination did not bar the individual officers of the debtor corporation from asserting their own attorney-client privilege to the extent one might exist. However, the question of multiple representation was addressed in *In re Grand Jury Subpoena Duces Tecum,* 391 F.Supp. 1029 (1975), wherein a similar situation arose. The government sought enforcement of a grand jury subpoena against a law firm who had represented a corporation as well as Robert Vesco, an officer and director of that corporation. The corporation waived its attorney-client privilege. Vesco did not. The Court stated as follows:

"The corporation has waived its privilege and since a corporation can act only through its officers, Vesco cannot assert the attorney-client privilege as to matters involving the affairs of ICC (the corporation), or embracing his role as an ICC officer or director." *In re Grand Jury Subpoena Duces Tecum, supra,* at page 1034.

■ Thus the corporation has its separate privilege from that of any individuals. The corporation is entitled to have information prepared on its behalf made available to it just as the individuals are entitled to their privilege. This is graphically demonstrated in *In the Matter of Kaleidoscope, Inc.,* 15 B.R. 232 (Bkrtcy.N.D.Ga.1981). The Court there considered an attorney's duty of fidelity to multiple clients and the attorney-client privilege, when applied in multiple representation matters.

"When the attorney simultaneously represents two or more clients, then the attorney owes this duty of fidelity and good faith to each of the clients he represents. He cannot prefer one over the other, and each is entitled to the fruits of his labor . . . With respect to ownership of the files created during joint representation, the Court concludes that the rationale of the attorney/client privilege cases involving joint representation, coupled with the rationale of the cases and authority cited

above respecting ownership of legal files involving one client, compel the conclusion that each of the jointly represented clients own an undivided interest in the legal files created during the course of their joint representation by an attorney, and each client has an equal right to access and possession of those files. In the context of this case, the Court concludes that initially possession of the original documents contained in all such joint representation files should be transferred to the trustee under the procedures hereinafter set forth." *Matter of Kaleidoscope, Inc., supra,* at page 245.

■ This case holds that each client has an equal right to the files and fidelity of the counsel representing each of them. Thus, the Trustee is the successor in interest to the debtor, who was represented by the defendants, and has a right to the production of the files and disclosure of all information pertinent to that representation. Certainly, where the Trustee has waived the attorney-client privilege on behalf of the debtor corporation, the Trustee has an absolute right to all of the information sought herein.

■ With respect to the claim by Davis of a Fifth Amendment privilege against self-incrimination, there is no evidence before me that there is a substantial and real hazard of incrimination. This is the test applied in *Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951) and *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed. 889 (1968).

In fashioning an order in this matter, I am mindful that while the corporation has the right to information, the attorney-client privilege of the individuals is likewise subject to some protection. Thus, on the basis of the foregoing circumstances and authority, it is

ORDERED that the deponents Davis, Berliner and Kearns respond in deposition to questions relating to the exact nature of the services they performed for the benefit of Investment Bankers, Inc. and that the defendants herein provide the documents set forth in the Request for Production filed June 18, 1982, and that such production shall be accomplished by July 8, 1983. It is

FURTHER ORDERED that the further deposition of Davis and Berliner, and the deposition of Kearns shall be scheduled at the convenience of the deponents and counsel to be accomplished by July 22, 1983. The documents produced and the testimony adduced by way of deposition shall be maintained on a confidential basis, under seal and not to be examined by anyone other than the parties or their counsel without further order of the Court.

## TRUSTEE'S MOTION FOR PROTECTIVE ORDERS

The issues raised by the pleadings herein relate to a voidable preference under 11 U.S.C. § 547 and a fraudulent transfer under 11 U.S.C. § 548. Additionally, there are those issues raised by the defenses and counterclaims herein. The notice of deposition and subpoena has been issued pursuant to Rule 26, F.R.C.P. Under Rule 26(b)(1), F.R.C.P., these defendants are entitled to discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action, . . ." Thus, the real inquiry is whether or not the requested discovery is relevant to the subject matter and, secondly, whether or not it seeks privileged information. It matters not whether the information sought is admissible at trial if it appears reasonably calculated to lead to the discovery of admissible evidence. The application of Rule 26(b)(1) F.R.C.P. is thoroughly discussed in *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

The discovery sought in this case is the oral deposition of Mr. Kenneth Hawkins, an investigator employed by the Trustee, together with the production at said examination of all "notes, memoranda, recordings, calendars and correspondence both to him and from him arising out of or in connection with his engagement by and on behalf of James H. Turner, SIPC Trustee, and/or Robert E. Warren, Jr., his attorney, and the

law firm of Gorsuch, Kirgis, Campbell, Walker & Grover, in the matter of Investment Bankers, Inc." This would be relevant to the issues in this matter. By way of *in camera* inspection, I have reviewed an Investigative Report dated March 10, 1983, and a follow-up memo dated March 25, 1983, together with various enclosures presented to me with the Investigative Report. The subject to the Investigative Report is "The Investment Bankers, Inc." The report deals with the principles of IBI and other key personnel. It contains a great deal of statements which would not be admissible in evidence. The report and enclosures, also, contain some matter that is not relevant to the issues raised by the pleadings. However, overall, the information appears to be highly relevant to a determination of the issues and sets forth information which, if developed, might lend assistance in resolution of this litigation. The development of such information might lead to admissible evidence against the defendants. On the other hand, a full exploration might develop the defense.

The next question is whether or not the subject matter is privileged. There is a difference between attorney-client privilege and the "fruits of an attorney's labor", which is defined as "work product." See, *In re Blier Cedar Co., Inc.,* 10 B.R. 993 (Bkrtcy.Me.1981) for a discussion of attorney-client privilege. See, *In the Matter of Kaleidoscope, Inc.,* 15 B.R. 232 (Bkrtcy.N.D. Ga.1981) for a discussion of attorneys work product. This decision is based on the seminal case of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

■ The essential elements to establish an attorney-client privilege, as recited in *In re Blier, supra,* are as follows:

1. The asserted holder of the privilege is or sought to become a client;

2. The person to whom the communication was made is an attorney, or his subordinate, and in connection with the communication is acting as a lawyer;

3. The communication relates to a fact of which the attorney was informed (a) by his client, (b) without the presence of strangers, (c) for the purpose of securing a legal opinion, legal services or assistance in some legal proceeding, (d) and not for the purpose of committing a crime or tort; and

4. Privilege has been claimed and not waived by the client.

■ The matters presented to me for inspection reflect the Investigative Report of an expert employed by the Trustee. These matters and the deposition of the expert do not appear to be covered by the attorney-client privilege as previously defined herein, but may be subject to the protections provided for in Rule 26(b)(3) or (4), F.R.C.P.

Rule 26(b)(3), F.R.C.P. protects the attorney's "work product" as discussed in *Matter of Kaleidoscope, Inc., supra,* by requiring a showing that the party seeking discovery has a "substantial need" for the information in the preparation of this case, and that the party is "unable without undue hardship" to obtain such materials or their substantial equivalent by other means. The Rule goes on to provide that, in ordering discovery under such circumstances, the court shall protect against the disclosure of "mental impressions, conclusions, opinion or legal theories of an attorney or other representative of a party concerning the litigation." Rule 26(b)(3), F.R.C.P. The circumstances herein indicate a direct, frontal attack on the advice given by these defendants, the work performed by them, and the fees charged by them.

The complaint alleges that the transfers of monies to defendants, purportedly for fees, were fraudulent, unlawful, violative of the Bankruptcy Code and, in general, contests the validity of such transfers as legitimate attorney's fees. It may well be appropriate to present evidence relating to the relationship of these defendants to Investment Bankers, Inc., exactly what these transfers were for, when they occurred, and why. The Answer lists a number of affirmative defenses and sets forth other issues by way of counterclaims. Having found the report to contain relevant information for exploration, it is my conclusion that there has been a showing of the "substantial

need" of this material to properly prepare a defense. Further, I have been presented with no indication how the substantial equivalent of this material could be obtained by other means, whether with or without undue hardship.

The next inquiry to be faced is whether, in ordering discovery, this material is subject to the protections "against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney *or other representative* of a party concerning the litigation." The alternative is to regard this investigator as an "expert" subject to the provisions of Rule 26(b)(4), F.R.C.P. Inasmuch as counsel for the Trustee stated that the investigator is not expected to be called as a witness at trial, the relevant section would be Rule 26(b)(4)(B), F.R.C.P. relating to "an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial."

 I conclude that the investigator in this instance has been employed to assist the attorney in determining whether legal cause exists to proceed against the defendants. As such, he is a "representative" of the party, akin to a "consultant", as discussed in Rule 26(b)(3), F.R.C.P. Investigative reports and other documents prepared or compiled by such an individual, for an attorney, in anticipation of litigation or for trial are protected from discovery absent the required showing of "substantial need" and "undue hardship." *Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367 (D.C.Ill.1972). An "expert" is one who is called upon to render an opinion on the ultimate fact. Accordingly, it appears appropriate that the orders hereinafter entered protect against disclosure of the investigator's mental impressions, conclusions, opinions, or legal theories concerning the litigation. The contents of the proffered material contain largely factual, investigative information. However, there are some notations that qualify as conclusions. The first such conclusion is contained on page 4 of the Report dated March 10, 1983, and is

the two line sentence immediately preceding the word "ADDENDUM". This sentence shall be stricken from any production to defendant. The second conclusion is contained on page 5 of the Report under the heading "Regarding Mr. Greg Smith:", and is the second sentence contained within that paragraph. This shall likewise be stricken. On the basis of the foregoing discussion, it is

ORDERED that the documents set forth in the Notice of Deposition and Subpoena, which documents have been represented to be those presented to me for *in camera* inspection, shall be produced with the excisions previously noted herein. It is

FURTHER ORDERED that Kenneth Hawkins shall be presented for deposition but shall only be deposed with respect to his factual investigation. Mr. Hawkins shall not be questioned regarding any mental impressions, personal conclusions, opinions or legal theories which he may have gleaned during the course of or resulting from his factual investigation.