**In re Bryan K. FOSTER, SS # 501–62–5486, Debtor.**

**Bankruptcy No. 96–20056–SBB.**

United States Bankruptcy Court, D. Colorado.

Aug. 4, 1997.

Mark Redmiles, Merrick, Calvin & Merker, L.L.P., Denver, CO, for Jeffrey Hill, Chapter 7 Trustee.

John C. Smiley, Lindquist, Vennum & Christensen P.L.L.P., Denver, CO, for Bryan K. Foster.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the "Trustee's Motion for Turnover or Disclosure of Recorded Information Relating to Debtor's Property or Financial Affairs" filed February 12, 1997, Reinhart, Boerner's Objection thereto filed February 24, 1997, the Debtor's Objection thereto filed February 25, 1997, and the Trustee's Response to the Objections filed April 7, 1997. The Court, having reviewed the file and being advised in the premises, makes the following findings of fact and conclusions of law, and enters the following order.

## ISSUES PRESENTED

This is a matter of first impression. The Court is presented with the unique circumstance of an individual debtor, who has been convicted of criminal activity, but who is currently appealing that conviction, and his former (civil and criminal) attorneys' resistance to a Chapter 7 trustee's efforts to obtain certain documents and information regarding civil causes of action belonging to the estate. The Debtor and his attorneys claim (a) attorney-client privilege, (b) work product privilege, and (c) the right to withhold turnover of documents predicated on the Debtor's right against self-incrimination and right to counsel in the Fifth and Sixth Amendments to the Constitution.

For the reasons set forth below, this Court finds that, under the particular facts of this case, neither the attorney-client privilege, the work-product doctrine, nor the constitutional rights asserted by the debtor, bar the production of documents requested by the Trustee from Debtor's counsel.

## FACTUAL BACKGROUND

An involuntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code was filed against the Debtor on August 15, 1996 (the "Petition Date"). The Debtor consented to the entry of an Order for Relief and an Order for Relief was entered on September 18, 1996. The Debtor voluntarily complied with the statutory requirement and filed his statement of financial affairs and schedules on October 11, 1996. 11 U.S.C. § 521.

The Debtor was the subject of a criminal prosecution in the United States District Court for the District of Montana (*U.S. v. Foster*, Criminal Case No. 96CR17 CLL, the "Criminal Case"). That case resulted in a criminal conviction for wire fraud and on February 13, 1997, the Debtor was sentenced to a term of 41 months imprisonment. The Debtor has filed a Notice of Appeal and has indicated that he intends to request reversal of his conviction and remand to the District Court for a new trial.

Additionally, on the Petition Date, the Debtor was a plaintiff in three separate civil actions. Two cases were pending in the United States District Court for the District of Colorado, Case No. 96–S–1288 (the "Evro Case")[1] and Case No. 96–K–1479 (the "Code-

---

1. Styled, *Bryan K. Foster, d/b/a Genesee Cattle Company v. Evro Corporation, a Florida corporation, Daniel M. Boyar, individually, and Stephen H. Cohen, individually,* filed March 31, 1996 in the U.S. District Court for the District of Colorado, involves causes of action based upon breach of promissory note, breach of consulting agreement, breach of personal guarantee, fraud in the inducement, and general fraud. The Debtor maintains that: "Both EVRO Corporation and

Hamilton–Chase Ventures owe [the Debtor] considerable amounts on short-term, secured loans. Both loans are in default, and [the Debtor] has commenced litigation to collect the amounts due. The Debtor's commencement of litigation to collect amounts due him, which would allow him to pay his creditors,...." *See,* Debtor's Objection to Motion of Petitioning Creditors for Appointment of Interim Trustee and Request for Hearing, ¶ 8, filed August 26, 1996.

pa Case").[2] A third case was pending in the Cook County, Illinois Circuit Court (the "Interac TV Case").[3] The Evro Case and the Codepa Case represent two of the largest potential assets of the Debtors' estate.

Attorneys with the law firm of Reinhart, Boerner, Van Dueren, Norris & Rieselbach, P.C. (the "Reinhart Firm"), 1700 Lincoln Street, Suite 3725, Denver, Colorado, represented the Debtor in both the Criminal Case[4] as well as in the Evro and Codepa Cases[5] prior to the Petition Date.

The Reinhart Firm also participated in the preparation of a complaint filed pre-petition in the United States District Court for the District of Montana (the "Baldassin Claims") which was dismissed without prejudice prior to the Petition Date due to the fact that certain unspecified statutory prerequisites to the action had not been satisfied.

Attorney Terrance J. McConville ("McConville"), 36 S. Wabash, Suite 1300, Chicago, Illinois, represented the Debtor as local counsel for the Reinhart Firm in the Interac TV Case prior to the Petition Date.

The Trustee initially intended to have the Reinhart Firm employed as special counsel in the within bankruptcy case to assist him in litigating, collecting, and reducing to money the estate property represented by the Evro, Codepa, Interac TV Cases, and the Baldassin Claims. An engagement letter outlining the terms of such employment was prepared and signed by the Trustee and the Reinhart Firm on October 1, 1996.[6] Following dissemination of the proposed employment arrangement to the Estate's creditors, but prior to a formal request being filed with the Court, the Reinhart Firm withdrew its consent to the agreement, based on objection expressed thereto by counsel for the petitioning creditors.

By way of the instant Motion, the Trustee has requested that the Reinhart Firm and McConville turnover to the Trustee documents and recorded information in their possession so that the Evro, Codepa, Interac TV Cases, and the Baldassin Claims and the pending litigation can be evaluated, and, if appropriate, pursued by the Trustee and his attorneys independent of the Reinhart Firm.

On January 8, 1997, the Reinhart Firm voluntarily turned over certain documents in its possession.[7] Both the Reinhart Firm and

---

2. Styled, *Bryan K. Foster, d/b/a Genesee Cattle Company v. Codepa Ltd., a Grand Cayman corporation, Codepa USA, a Florida corporation, Raul Lopez, a/k/a Rodelio Lopez, individually, Hamilton Chase Ventures, Inc., a Nevada corporation, Joy Financial Corporation, a Nevada corporation, Brian D. Anderson, individually, William C. Carr, individually, and Reid Morgan, individually,* filed June 18, 1996 in the U.S. District Court for the District of Colorado, involves causes of action based upon breach of promissory note, breach of contract, fraud in the inducement, unjust enrichment, and general fraud.

3. Styled, *Bryan K. Foster, d/b/a Genesee Cattle Company v. Interac TV, Inc., Randy Boatwright and Charles Krieter,* filed in June 1996 in the Circuit Court, Cook County, Illinois.

4. The Reinhart Firm represented the Debtor during proceedings resulting in the Debtor's conviction for wire fraud in the United States District Court for the District of Montana.

5. Stephen C. Peters, Esq. of the Reinhart Firm represented the Debtor in the Evro Case. Otto K. Hilbert, II, who at the time was with the law firm of LeBouf, Lamb, Greene & MacRae L.L.P., represented the Debtor in the Codepa Case and joined the Reinhart Firm shortly before the Petition Date.

6. In part, the Trustee sought to retain the Reinhart Firm because: "Reinhart has expended substantial time and effort to learn the facts of these cases, which involve numerous commercial obligations and are otherwise complex. Many of the parties who are defendants in these cases testified under oath during the Debtor's criminal trial, and have already been subject to examination about these transactions by Reinhart's attorneys. The parties believe that changing counsel due to the commencement of the bankruptcy case would be detrimental to the progress of the cases described in the foregoing recitals." Debtor's Exhibit 2, p. 2 (letter agreement between the Reinhart Firm and the Trustee dated September 30, 1996).

7. The Reinhart Firm represents that it produced some 4000 pages, representing "all source documents accumulated during its representation of [the Debtor] in his criminal proceeding and related civil actions." There appears to have been no documents voluntarily turned over to the Trustee that were not, originally, received by the Reinhart Firm from or through the Debtor. No attorney work product of any nature has been relinquished.

McConville refused to turnover other documents, claiming the protection of either the attorney work product privilege or the attorney-client privilege.[8] Further, the Reinhart Firm asserts that the disclosure of the withheld documents[9] could compromise the Debtor's criminal case in the event that a new trial is ordered as a result of his current appeal. Specifically, the Reinhart Firm maintains that disclosure of these documents "would seriously impinge [the Debtor's] Fifth Amendment right to remain silent and his Sixth Amendment right to assistance of counsel." (Reinhart Objection, p. 4).

The thirty-six documents being withheld by the Reinhart Firm are identified on a Log to Documents which specifies the type, date, and author of each document, recipients of such document, and the nature of the claimed privilege asserted for each document. The Log and the documents in contention here are *not*, and do *not* consist of, any materials in the files maintained by the Reinhart Firm for defense of the Debtor in his criminal case. The documents at issue, now before this Court, are documents from the Reinhart Firm's files pertaining *only* to the civil actions.[10]

The Debtor stresses, by way of his Objection, that he has not and does not waive "any of his work product privileges, his attorney-client privileges, or his other rights."

## DISCUSSION

This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. § 157.

■ In general, because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact finding function, they are not favored and, where recognized, must be narrowly construed. *In*

*re Williams,* 152 B.R. 123, 127 (Bankr. N.D.Tex.1992).

■ Rule 9017, Fed.R.Bankr.P., provides that the Federal Rules of Evidence apply in cases under the Bankruptcy Code. Federal Rule of Evidence 501 provides that, except as otherwise required, the existence of privileges is governed by federal common law, unless, in a civil action, state law provides the rule of decision. Although determination of property of the estate is dependent upon state law, the ultimate determination is made under federal law. *See, In re Carter,* 62 B.R. 1007, 1011 (Bankr.C.D.Cal.1986).

### A. The Attorney–Client Privilege

The attorney-client privilege asserted by the Debtor and the Reinhart Firm presents the most difficult issue before this Court. Simply stated, the question is: With respect to recovering assets of an estate in the nature of pre-petition litigation, may a bankruptcy trustee require turnover of documents from the debtor's counsel?

This Court concludes that the answer is "yes." The right to assert an attorney-client privilege is acquired by the trustee in bankruptcy in a situation where, as here, the trustee has become entitled to and the estate is owner of assets in the nature of a debtor's pre-petition causes of action against third parties.

"The oldest of the privileges for confidential communications, the attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice. The privilege also protects communications from the lawyer to his client, at least if they would tend to disclose the client's confidential communications. Its application is a

---

8. After receiving and reviewing documents from McConville, the Debtor subsequently admitted that no privilege existed as to those documents and reportedly made arrangements to deliver McConville's files to the Trustee. *See,* "Terrence J. McConville Privilege Log" filed April 18, 1997.

9. The thirty-six documents withheld are referred to as "few" and are described as "legal memoranda, notes, letters and other documents containing legal opinions." *See,* Debtor's Exhibit 1.

10. *See,* note 1, Debtor's Exhibit 1 ("This log does not identify specific materials in the filed maintained by [the Reinhart Firm] for defense of the debtor in *United States v. Foster,* CR 96–17–M–CCL, United States District Court, District of Montana, Missoula Division. Given the due process concerns which would be raised by identifying or disclosing those materials, no effort was made to include them in the log since they are not requested in the Trustee's Prayer for Relief (Mtn. for Turnover at p. 3) or in the Trustee's November 4, 1996, letter (Ex. 3).").

question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents. The burden of demonstrating the applicability of the privilege rests on the party who invokes it." *Hodges, Grant & Kaufmann v. U.S.*, 768 F.2d 719, 720–721 (5th Cir.1985) (footnotes omitted).

"To create an attorney-client privilege, the following facts must be established: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar or a court, or his subordinate and (b) in connection with this communication is acting as a lawyer, (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of others (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services ... and not (d) for the purpose of committing a crime or tort; and (4) the privilege has ... not been waived." *In re Grand Jury Subpoenas Dated December 18, 1981 and January 4, 1982*, 561 F.Supp. 1247, 1251 (E.D.N.Y.1982) (citing *U.S. v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358 (D.Mass.1950)).

It is a well-established axiom that the attorney-client privilege belongs to the client, as a general rule. *See, generally, Carter, supra* at 1014. The unique circumstances of an intervening bankruptcy, however, insert a different element into the typical equation. Moreover, there is little case law addressing this issue, particularly with respect to an individual, as opposed to a corporate, debtor. *See, McClarty v. Gudenau*, 166 B.R. 101 (E.D.Mich.1994) (trustee brought action to recover from debtor's former attorney for alleged malpractice and moved to compel production of documents from the attorney—court held that the attorney-client privilege of the individual debtor did not pass to the trustee); [11] *Carter, supra* (individual debtor charged with numerous counts of grand theft and securities violations controls his attorney-client privilege); *In re Silvio DeLindegg Ocean Developments of America, Inc.*, 27

B.R. 28 (Bankr.S.D.Fla.1982) (finding the trustee to be without authority to waive an individual debtor's attorney-client privilege); *In re Smith*, 24 B.R. 3 (Bankr.S.D.Fla.1982) (privilege passes—without discussion of the unique aspects of an individual debtor). *Compare, Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) (privilege exercised by Trustee for corporate Chapter 7 debtor); *In re Fairbanks*, 135 B.R. 717 (Bankr.D.N.H.1991) (finding "extraordinary circumstances" existed where the debtor had fled the jurisdiction and allowed the Chapter 7 trustee to exercise the attorney-client privilege); *Williams, supra* (Chapter 11 debtor); *In re Hunt*, 153 B.R. 445 (Bankr.N.D.Tex. 1992) (same). *See, generally*, Neil E. Herman, *Who Controls the Attorney–Client Privilege in Bankruptcy?*, 13 Hofstra L.Rev. 549 (Spring, 1985).

*Weintraub* is recognized as a seminal case in the area of attorney-client privilege. In *Weintraub* the Supreme Court held that the attorney-client privilege (a) was available to a corporation, (b) passed from the corporation's management to a Chapter 7 trustee, and (c) could be waived by a trustee for pre-petition attorney-client communications.

Unfortunately, *Weintraub* provides little guidance in this particular situation where an individual debtor is asserting the privilege as against a Chapter 7 Trustee who wants documents and information from the Debtor's pre-petition counsel. In fact, the Supreme Court specifically rejected the argument that its *Weintraub* holding would also apply to an individual debtor by noting that

Our holding today has no bearing on the problem of individual bankruptcy, which we have no reason to address in this case. ... An individual ... can act for himself, there is no "management" that controls a solvent individual's attorney-client privilege. If control over that privilege passes to a trustee, it must be under some theory

---

11. "It is anticipated that the debtor will cooperate with the Trustee's request for a waiver of the privilege. Yet I believe it is for the debtor in the first instance, and not the Trustee or this Court,

to determine whether to waive her privilege with her former attorneys." *McClarty v. Gudenau*, 166 B.R. 101, 102 (E.D.Mich.1994).

different from the one we embrace in this case.

*Weintraub, supra* at 356–357, 105 S.Ct. at 1995.

Other post-*Weintraub* bankruptcy cases have considered this issue, although none have considered facts identical to the facts before this Court, and certainly none are controlling. Certain courts have held that the right to exercise the privilege does not pass from a debtor to a trustee. The court in *McClarty* reasoned,

> The primary purpose of the attorney-client privilege is to facilitate free and open communications from a client to a lawyer. Limitations on a client's control over the privilege will inhibit such free and open communication. If a client knows that, should she fall on hard financial times, her privilege may be unilaterally waived by a stranger who is appointed to serve as her Trustee in bankruptcy and whose interest in the matter and concerns for privacy may differ from her own, then the fundamental purpose of the privilege could be eroded. Thus, these policy considerations justify a rule that preserves the control of the privilege to the debtor.

*McClarty, supra* at 102.

"A rational individual would not divulge sensitive information to an attorney who might be forced to reveal the information if the individual suffers a financial reversal." Herman, *supra* at 584. "[T]he expectation of the individual client ... is that, unless he abuses the attorney-client relationship by using it in furtherance of crime or fraud, he and no-one else will decide when to waive his privilege. The individual debtor who seeks legal advice on his own behalf is thus fundamentally different from the corporate debtor's manager." *Hunt, supra* at 452.

One commentator has drawn the following comparison:

> The trustee of an individual debtor assumes control over most of the assets of that individual, just as he does in the case of a corporate debtor. The trustee, however, does not control the individual himself, he cannot force the debtor to work, to change jobs, or to do anything the individ-

ual debtor does not wish to do. The trustee, in effect, has not more control over the person who has purchased all of that person's assets: he is only given the power to control the use of the assets. The mere transfer of assets from one person to another does not entail the transfer of the individual's attorney-client privilege as well.

William R. Mitchelson, Jr., *Waiver of the Attorney–Client Privilege by the Trustee in Bankruptcy*, 51 U.Chi.L.Rev. 1230, 1259 (1984) (footnotes omitted).

(Quoted by, *e.g., Hunt, supra* at 453–454).

Other courts have addressed different factual situations involving individual debtors and concluded differently. In *Williams, supra,* the court held that the right to exercise the privilege did pass from the debtor to a bankruptcy trustee; that the trustee was the holder of the Chapter 11 debtor's pre-petition attorney-client privilege concerning bankruptcy-created claims for an avoidance of transfers to debtor's family members. The court in *Williams* concluded as follows:

> [w]ith his bankruptcy petition, Williams the individual relinquished control over his evidentiary privileges made in connection with potentially avoidable transfers to Williams, the debtor in possession, a fiduciary for the bankruptcy estate. That fiduciary relinquished control over the evidentiary privileges upon the effectiveness of the confirmed plan's transfer of the avoidance causes of action to the liquidating trust. In exchange, Williams, the individual debtor, received a discharge of over $100 million of unsecured debt.

An individual debtor may suffer adverse effects if someone other than the individual controlled the attorney/client or accountant/client privileges. One of the purposes of the privileges is to protect the client, here the debtor Williams; in confidential communications made to his attorney or accountant in his professional status. The exercise of the privileges under the facts of the Williams case can have no adverse effect on Williams, although there is a potentially adverse effect on Williams' family members. The Code does not protect a debtor's insiders or affiliates from facing

potential avoidance litigation. To the contrary, the Code gives the bankruptcy fiduciary causes of action to avoid transfers to insiders. The liquidating trustee is not seeking to exercise control over evidentiary privileges pertaining to litigation to avoid a discharge. Nor is this a case where a liquidating trust is purporting to exercise control over any constitutional privilege, such as that preserved for individuals by the Fifth Amendment to the United States Constitution. Rather, this is a case limited to a liquidating trust of an insolvent individual debtor exercising control over evidentiary privileges in connection with avoidance and other causes of action established under Chapter 5 of the Bankruptcy Code, transferred by the fiduciary debtor in possession to the liquidating trustee to act as representative of the estate under a confirmed plan of liquidation.

*Williams, supra* at 129–130 (citations omitted).

Addressing the case where, as here, the debtor voluntarily disclosed information for the purpose of compiling the required statements and schedules, the Seventh Circuit in *U.S. v. White*, 950 F.2d 426 (7th Cir.1991) held that the information provided by a debtor to his attorney pre-petition was not privileged; it would be available to the trustee.

When information is disclosed for the purpose of assembly into a bankruptcy petition and supporting schedules, there is no intent for the information to be held in confidence because the information is to be disclosed on documents publicly filed with the bankruptcy court. [The Seventh Circuit's prior opinion in *Matter of*] *Feldberg* [862 F.2d 622 (7th Cir.1988) ] is not to the contrary. While there we noted the difference between expectations about communications and expectations about documents, we still emphasized that "[i]nformation imparted to counsel **without any expecta-**

**tion of confidentiality** is not privileged." [*Feldberg, supra* at 628 (emphasis added).]

*White, supra* at 430 (emphasis added).

■ This Court is persuaded and concludes that the right to assert, or to waive, the attorney-client privilege, passes from a debtor to a bankruptcy trustee where, as in this particular situation, it involves recovery of assets of the estate in the nature of pre-petition civil actions. This conclusion is supported by (1) applicable case law, including guidelines derived from the Supreme Court in *Weintraub*, (2) the nature of the claims in this case and the particular documents sought by the Trustee, and (3) the rationale for limiting doctrines which impinge on trustees' and litigants' access to information and discovery.

### 1. Applicable Case Law.

Starting with *Weintraub*, the Supreme Court, while expressly limiting its holding to corporate debtors, nonetheless recognized that the attorney-client privilege is, and is intended by Congress to be, subject to judicial interpretation[12] and that the Bankruptcy Code, particularly Section 542(e), is "intended to restrict ... the ability of ... attorneys to withhold information from the trustee." *Weintraub, supra* at 351, 105 S.Ct. at 1992.

Moreover, the Supreme Court, in its decision in *Weintraub*, effectively balanced (a) the rights and needs of a trustee to fulfill his or her fiduciary duty with (b) the federal interests that would be impaired by the trustee's control of the attorney-client privilege with respect to prebankruptcy communications. The Supreme Court determined that "no federal interests ... would be impaired by the trustee's control of the corporation's attorney-client privilege with respect to prebankruptcy communications." *Weintraub, supra* at 353, 105 S.Ct. at 1993. The Supreme Court concluded that the Bankruptcy Code's legitimate goals would be defeated

---

**12.** The Supreme Court observed that
Congress intended that the courts deal with this problem:
"The extent to which the attorney client privilege is valid against the trustee is unclear under current law and is left to be determined by the courts on a case by case basis."

124 Cong.Rec. 32400 (1978) (remarks of Rep. Edwards); *id.,* at 33999 (remarks of Sen DeConcini).
The "subject to any applicable privilege" language is thus merely an invitation for judicial determination of privilege questions.
*Weintraub, supra* at 351, 105 S.Ct. at 1992.

by allowing the attorney-client privilege to remain with a debtor and "to ... effectively thwart an investigation" of the Trustee. *Weintraub, supra* at 353, 105 S.Ct. at 1993.

A fair inference from *Weintraub* and legislative history is that the Debtor's claim of attorney-client privilege is not inviolate; it is not without conditions and qualifications. The right to invoke the attorney-client privilege in bankruptcy is subject to the particular circumstances of the case. This Court, in these circumstances, is also not able to discern a federal interest that would be impaired by this Trustee exercising the right to review the subject documents and not being barred by the Debtor's claim of the attorney-client privilege with respect to recovering these assets of the Estate. Indeed, this Court believes that the reasoning and rationale of the Supreme Court allowing the trustee the right to exercise the attorney-client privilege in *Weintraub* is applicable in this situation as well.

In addition to the post-*Weintraub* case law cited above, *i.e.* the *Williams* and *White* cases, which hold that the attorney-client privilege passes to the trustee in certain bankruptcy situations, this District has similar, albeit pre-*Weintraub,* case precedent.

*In re Investment Bankers, Inc.,* 30 B.R. 883 (Bankr.D.Colo.1983) involved a complaint seeking the return to the estate of funds received by the debtor's attorneys pre-petition on theories of preference and fraudulent transfer. There, the court held that "[f]ees paid for legal work and the general nature of the legal work performed do not constitute a confidential communication and are, therefore, outside the attorney-client privilege.[13] It is clear that the Trustee has wide latitude to obtain any facts pertaining to the bankrupt's conduct or property." *Investment Bankers, supra* at 885 (citations omitted). In that case, the court reasoned that "the Trustee seeks to waive the attorney-client privilege of the debtor so that he can investigate the facts surrounding payment of over $87,000.00 to these two law firms. A Trustee in bankruptcy succeeds to a debtor's right to assert or waive the attorney-client privilege." *Investment Bankers, supra* at 886 (cases cited). In the instant case, the Trustee seeks not necessarily to *waive* the attorney-client privilege with respect to the documents at issue, but rather to own, or hold and assert, and be free of the Debtor's claim of the privilege, thus allowing examination of the documents without an actual waiver of the privilege *vis-a-vis* third parties. Such a distinction makes the consequences of the present case perhaps less dramatic.

## 2. Nature of Claims Asserted and Documents Sought.

The claims asserted by the Debtor in his pre-petition lawsuits appear to constitute the substantial, if not the only, assets in the bankruptcy estate. As the Debtor advised this Court, it is these particular claims which will allow the Debtor's creditors to be repaid.[14] They are affirmative claims for breach of contract, fraud, and claims on promissory notes against third persons with whom the Debtor conducted business prepetition.

The claims were asserted by the Debtor in good faith and advanced by the Debtor's counsel, pursuant to Rule 11, Fed.R.Civ.P., only after careful inquiry and after establishing that the Complaint was "well-grounded in fact and ... warranted by existing law or a good faith argument...."

It is also important to remember that the documents here requested are strictly limited to those in the Reinhart Firm's files for these pending civil actions. The documents sought be the Trustee do not include any documents from the Debtor's criminal files maintained by the Reinhart Firm.[15]

---

**13.** This holding, itself, supports a decision by this Court that the billing statements being withheld by the Reinhart Firm are not subject to the attorney-client privilege. This is true even if this Court's view that the privilege passes from the Debtor to the Trustee is incorrect.

**14.** *See,* note 1, *supra.*

**15.** This Court recognizes that the Reinhart Firm maintains the subject documents in its civil action files are closely related to the documents in the criminal file. The question of the Debtor's Fifth Amendment right is addressed below.

### 3. Policy.

The reasoning and rationale for limiting doctrines which impinge on a bankruptcy trustee's and other litigants' access to information and documents, support this Court's determination that counsel should be required to turnover the requested documents to the Trustee.

Section 542(e) sets the framework that trustees are entitled to an attorney's "recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs" "[s]ubject to any applicable privilege." The privilege, however, does not apply in certain circumstances.

With regard to recovering assets of a debtor's estate, if the Trustee could not recover documents shielded by the Debtor's continued assertion of the attorney-client privilege, then certain important anomalies arise. It would be anomalous, for example, to have a corporate business debtor stripped of its authority to assert the attorney-client privilege—as in *Weintraub*—but allow a sole proprietorship, as here, the exclusive right to exercise the privilege. So too, it would be anomalous for a business partnership's trustee to be accorded the right to assert the attorney-client privilege—as in *U.S. v. Campbell*, 73 F.3d 44 (5th Cir.1996)—but deny a small business person's trustee that same right. *Campbell, supra* (holding that a trustee of a debtor limited partnership had the authority to waive attorney-client privilege on behalf of the partnership). By mere happenstance of business form, a trustee and the creditors might arbitrarily be denied critical information and/or documents regarding a debtor's estate assets, thus depriving them of access to, or recovery on, their claims.

It would also create a curious anomaly to allow a Chapter 11 corporate debtor's trustee to exercise the attorney-client privilege—as in *Weintraub*—while denying a Chapter 11 individual debtor's trustee the same right. And what about the troublesome situation where corporate and individual Chapter 11 cases are converted to Chapter 7 cases; both Chapter 11 debtors-in-possession serve in the same capacity and act as fiduciaries, but on conversion, the trustee in one Chapter 7 case acquires the attorney-client privilege, the other one does not?

This Court concludes that, with regard to the Trustee's recovery of Estate assets in the nature of the Debtor's pre-petition civil actions, the attorney-client privilege asserted by the individual Chapter 7 Debtor does not bar the Trustee from access to and use of the documents held by Debtor's counsel.

### B. The Work–Product Doctrine

"The work product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation. The rule protects work product which reveals the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. However, work product materials may be ordered produced upon an adverse party's demonstration of substantial need or inability to obtain the equivalent without undue hardship." *Miller v. Pancucci*, 141 F.R.D. 292, 303 (C.D.Cal.1992) (citations omitted). *Accord, In re Grabill Corp.*, 103 B.R. 996, 999 (Bankr.N.D.Ill.1989). "It does not exist to produce a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparation from the discovery attempts of an opponent." *Grabill, supra* at 999.

"The parameters of the privilege are still developing but in general the 'work product' label fairly conveys the substance of the concept. It is distinct from and broader than the attorney-client privilege, which protects only communications between the attorney and his client. A lawyer may assert the work product privilege, indeed, it has been said that he alone may invoke it. We are not inclined to accept quite that narrow an application, however. It is not realistic to hold that it is only the attorney who has an interest in his work product or that the principal purpose of the privilege to foster and protect proper preparation of a case is not also of deep concern to the client, the person paying for that work. To the extent a client's interest may be affected, he, too, may assert the

work product privilege." *In re Grand Jury Proceedings,* 604 F.2d 798, 801 (3rd Cir. 1979). *Accord, Vermont Gas Systems, Inc. v. U.S. Fidelity & Guar. Co.,* 151 F.R.D. 268, 275 (D.Vt.1993); *Donovan v. Fitzsimmons,* 90 F.R.D. 583, 587 (N.D.Ill.1981) ("More to the point, the two privileges address different concerns. Not only does the work-product doctrine serve to protect the confidentiality in the attorney-client relationship, but it also protects the attorney from undue and unfair disclosure.") (cases cited); *Grabill, supra* at 998. *But see, Panter v. Marshall Field & Co.,* 80 F.R.D. 718, 725 n. 7 (N.D.Ill. 1978); *Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. 136, 152 (D.Del.1977).

"It is true that the lawyer has the ultimate expression of the work product rule, inasmuch as it is his work product and his unfettered representation on behalf of the client which is being protected. The purpose of the work product doctrine nonetheless is not to endow lawyers as individuals with an untouchable status. The doctrine was designed to assure future litigants uninterrupted and unimpaired access to, and use of, judicial mechanisms. The work product rule recognizes the lawyer's services as an indispensable part of the judicial scheme, but it was not designed as a fringe benefit for protecting lawyers who would, for their personal advantage, abuse it." *In re Doe,* 662 F.2d 1073, 1079 (4th Cir.1981), *cert. den'd,* 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982).

■ The United States Supreme Court has described the doctrine as an "intensely practical one, grounded in the realities of litigation in our adversary system." *U.S. v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975). It provides qualified, not absolute, protection which, like other qualified privileges, may be waived. *Maertin v. Armstrong World Industries, Inc.,* 172 F.R.D. 143, 148 (D.N.J.1997). The doctrine is not limited to materials produced only by lawyers. *Maertin, supra* at 150–151. However, documents produced in the regular course of business do not fall under the ambit of the work-product doctrine. *Miller, supra* at 303.

"[T]he work product doctrine serves the adversary system 'by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent.' Disclosure of work-product material to a third party does not, therefore, necessarily waive the protections afforded by the doctrine. In order to waive work-product protection, the disclosure must be inconsistent with maintaining the secrecy of an attorney's trial preparation. Most courts find that work-product protections are waived when the disclosure is to an adversary or has substantially increased the opportunities for an adversary to obtain the information." *Varel v. Banc One Capital Partners, Inc.,* 1997 WL 86457, *2 (N.D.Tex.1997) (not reported in F.Supp.) (citations omitted).

■ The burden of establishing that a document is attorney work-product is on the party seeking the protection of the doctrine, and the burden of establishing that materials determined to be attorney-work product should nonetheless be disclosed is on the party seeking production. *Varel, supra* at *2.

The Trustee maintains that he is the "successor client," and as such, he is entitled to disclosure of the work-product. *Gottlieb v. Wiles,* 143 F.R.D. 241, 247 (D.Colo.1992) ("[An] attorney may not withhold work product from his own client."). *Accord, Matter of Michigan Boiler and Engineering Co.,* 87 B.R. 465, 468 (Bankr.E.D.Mich.1988) ("The work product doctrine, when applicable, serves to protect disclosure to an adversary. It has no application in cases where a client seeks to obtain documents and other tangible things created or amassed by an attorney during the course of the attorney's representation of that client.") (citations omitted).

■ In the instant case, the Trustee seeking discovery of the documents may not qualify as a "successor client," however, he most certainly is *not* an opponent or adversary. Rather, the Trustee and the Debtor share a common interest in pursuing the pending civil litigation.[16] As such, (a) the work-prod-

---

**16.** The Reinhart Firm admitted as much during

negotiations to have the Firm employed by the

uct doctrine is not implicated, and (b) there is no waiver, by way of production of the documents to the Trustee, vis-a-vis the civil defendants. Therefore, the work-product doctrine does not prohibit turnover.

Further, turnover to the Trustee of the documents to which a work-product privilege has been claimed would not appear to result in a waiver of that protection with regard to other parties. "The standard for waiver of work product protection is more lenient than the standard for waiver of attorney-client privilege because the two privileges serve different purposes. The majority rule is that disclosure to a third party does not automatically waive work product protection." McMorgan & Co. v. First California Mortg. Co., 931 F.Supp. 703, 709 (N.D.Cal.1996) (citations omitted). See, generally, Shields v. Sturm, Ruger & Co., 864 F.2d 379, 382 (5th Cir.1989) (voluntary disclosure to the court); Fox v. Taylor Diving & Salvage Co., 694 F.2d 1349, 1356 (5th Cir.1983) (same); Doe, 662 F.2d supra at 1081 ("Additionally, release of otherwise protected material without an intent to limit its future disposition might forfeit work product protection, regardless of the relationship between the attorney and the recipient of the material. In other words, to effect a forfeiture of work product protection by waiver, disclosure must occur in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material."); In re Circle K Corp., 1997 WL 31197, *5 (S.D.N.Y. 1997) (not reported in F.Supp.); In re In-Store Advertising Securities Litigation, 163 F.R.D. 452, 456 (S.D.N.Y.1995); GAF Corp. v. Eastman Kodak Co., 85 F.R.D. 46, 51–52 (S.D.N.Y.1979); American Standard, Inc. v. Bendix Corp., 71 F.R.D. 443, 446 (W.D.Mo. 1976). "So long as transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of their trial preparation efforts." United States v. AT & T, 642 F.2d 1285, 1299

(D.C.Cir.1980). Once a party has disclosed work product to an adversary, it waives the work product doctrine as to all other adversaries. McMorgan, supra at 709.

## C. Constitutional Issues

■ Clearly, the Fifth Amendment privilege against self-incrimination may be asserted in a civil action as well as in a criminal action. See, e.g., Lefkowitz v. Cunningham, 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977); Bank One of Cleveland, N.A. v. Abbe, 916 F.2d 1067, 1074 (6th Cir. 1990); Thomas v. Tyler, 841 F.Supp. 1119, 1124 (D.Kan.1993); J.C. Penney Life Ins. Co. v. Houghton, 1986 WL 14732, *2 (E.D.Pa. 1986) (not reported in F.Supp.).

■ At the same time, however, it appears equally clear that the privilege ceases to apply once a witness has been convicted of the offense with respect to which he or she fears incrimination. In re Duque, 177 B.R. 397, 404 (Bankr.S.D.Fla.1994) (appeals exhausted and conviction final); Bank One Cleveland, supra at 1075–1076 (Fifth Amendment rights continue in force until sentencing); J.C. Penney Life, supra at *2.

In a case where the defendants had been convicted of racketeering activities, one court observed,

[T]he Government has already obtained convictions against [them], and ... what are presently pending in the criminal case are the defendants' appeals from those convictions. I do not assume any particular result of those appeals—indeed, [the appellate judge] must have thought the appeals raised "substantial question[s]," since he released [them] pending appeal.... But I do view these defendants' positions as different from the usual applicant for such a stay whose criminal trial has yet to take place. ... Although there is a possibility of a retrial in the criminal ... case, it is only that.

\* \* \* \* \* \*

Trustee. The Firm's contention that the Trustee is, only now, upon failure to obtain approval of the Firm's employment, adverse to the interests of the Debtor in pursuing the subject civil litigation is unpersuasive, if not suspect. See, Trustee's Exhibit B ("We respectfully disagree with

any suggestion that this firm has a conflict of interest which would prevent us from dutifully and ethically serving the Trustee as special counsel in this bankruptcy proceeding."). See, also, Debtor's Exhibit 2, p. 2, quoted at n. 6, supra.

If a retrial of the criminal case does occur, and the Government offers evidence the defendants believe was derived from discovery in this case, defendants may challenge its admissibility at that time.

\*   \*   \*   \*   \*   \*

For similar reasons, I reject the notion that the potential exposure of the defendants' criminal trial strategy justifies deferring civil discovery herein. These defendants · have already disclosed a trial strategy in the criminal trial. They may, of course, wish to change their strategy if there is a retrial. But a retrial is a mere possibility, and the change in defense strategy speculative.

*U.S. v. Ianniello,* 1986 WL 7006, \*2–3 (S.D.N.Y.1986) (not reported in F.Supp.).

"The three requisites to the applicability of the privilege are: (1) compulsion, (2) testimonial communication, and (3) the testimonial communication must be self-incriminatory. To assure the protection it is designed to secure, the Fifth Amendment privilege against self-incrimination must be broadly construed. Generally, the privilege extends to any testimony which would furnish a link in the chain of evidence necessary to prosecute. Further, a court should deny an assertion of the privilege only if it is perfectly clear after a careful consideration of all the circumstances that compelling testimony cannot possibly have a tendency to incriminate the claimant." *In re Butcher,* 43 B.R. 60, 63 (Bankr.E.D.Tenn.1984) (citations omitted).

A Fifth Amendment privilege "is a personal privilege: it adheres basically to the person, not to the information that may incriminate him." *Couch v. U.S.,* 409 U.S. 322, 328, 93 S.Ct. 611, 616, 34 L.Ed.2d 548 (1973). Consequently, the contents of documents and records are never privileged under the Fifth Amendment. *U.S. v. Doe,* 465 U.S. 605, 617 n. 18, 104 S.Ct. 1237, 1245 n. 18, 79 L.Ed.2d 552 (1984). *See, also, Fisher v. U.S.,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) (Fifth Amendment protects against compelled self-incrimination, not the disclosure of private information).

■ Although the contents of a document may not be privileged, the act of producing the documents can be within the scope of the privilege. *In re Blinder, Robinson & Co., Inc.,* 140 B.R. 790 (D.Colo.1992) (document production can be testimonial in "limited circumstances"). The controlling inquiry in such a case is whether the very act of producing the documents sought by the trustee compels testimonial communication incriminatory to the debtor. However, when documents are sought from someone other than the debtor, courts have held that the act of production cannot possibly implicate the debtor's right against personal self-incrimination. *Duque, supra* at 404; *Carter, supra.*

■ Once again, the dynamics of a bankruptcy cast a slightly different light upon the question. As one court has observed, ·

The Bankruptcy Court faces a different legal context than this Court faces in the civil action. Rather than a private lawsuit to obtain a money judgment, the Bankruptcy Court is now administering a multiparty process of distribution and compensation, in which several parties—as well as the public at large—have interests. The equities in this context are simply different than in a bipolar civil action seeking a money judgment. As the Bankruptcy Court noted, a debtor in bankruptcy throws himself before the mercy of the Bankruptcy Court and his creditors; under these circumstances, in return for their reduced recovery, the creditors should at least have the right to monitor the debtor's financial status during the bankruptcy. [citation omitted] [Debtor's sole shareholder] intentionally availed himself of the bankruptcy process; this fact alone alters the equities, and favors requiring [the shareholder's] appearance.

*In re Save More Foods, Inc.,* 96 B.R. 1, 4 (D.D.C.1989).

Put another way,

The question is not of testimony but of surrender—not of compelling the bankrupt to be a witness against himself in a criminal case, present or future, but of compelling him to yield possession of property that he no longer is entitled to keep . . . . That is one of the misfortunes of bankruptcy if it follows a crime. The right not to

be compelled to be a witness against one-self is not a right to appropriate property that may tell one's story.

\* \* \* \* \* \*

A man who becomes a bankrupt of who is brought into a bankruptcy court has no right to delay the legal transfer of the possession and title of any of his property to the officers appointed by law for its custody or for its disposition, on the ground that the transfer of such property will carry with it incriminating evidence against him. His property and its possession pass from him by operation and due proceedings of law, and when control and possession have passed from him, he has no constitutional right to prevent its use for any legitimate purpose. His privilege secured to him by the ... Fifth Amendment[ ] to the Constitution is that of refusing himself to produce, as incriminating evidence against him, anything which he owns or has in his possession and control, but his privilege in respect to that was his and in his custody ceases on a transfer of the control and possession which takes place by legal proceedings and in pursuance of the rights of others, even though such transfer may bring the property into the ownership or control of one properly subject to *subpoena duces tecum.*

\* \* \* \* \* \*

The resolution of the conundrum mentioned above is to simply recognize that there are some regulatory disclosure requirements in modern society that have to be complied with even though there may in fact be some incidental incriminating effects upon the party required to comply— provided that the regulatory requirements in question are strictly noncriminal in nature and have general applicability throughout the society.

\* \* \* \* \* \*

It cannot be said that the Bankruptcy Code provides a regulatory or investigative regime designed to ferret out prospective criminal defendants. Under chapter 7 of the Code there is a statutory liquidation procedure of general applicability which depends upon, and requires full disclosure by the debtors involved.... It should be noted that while the present case is an involuntary bankruptcy the rationale and arguments put forth by the respondent law firm in this case would be equally applicable to a voluntary chapter 7 proceeding in which the debtor claims a discharge from his liabilities.... It certainly would be an irrational spectacle to have an individual come into the bankruptcy courts and obtain a discharge from his liabilities without ever disclosing his assets on the grounds of self-incrimination.

*Fairbanks, supra* at 725, 726, 730, 732.

This Court notes that a complaint objecting to the Debtor's discharge was filed by the Trustee on June 9, 1997 (97–1382–MSK). An answer has yet been filed by the Debtor. *See, generally, In re McCormick,* 49 F.3d 1524, 1526 (11th Cir.1995) (in Chapter 7 case, absent grant of immunity, a debtor is free to invoke his Fifth Amendment privilege and still receive a discharge—11 U.S.C. § 727(a)(6)(B)); [17] *In re Martin–Trigona,* 732 F.2d 170, 173 (2nd Cir.), *cert. den'd,* 469 U.S. 859, 105 S.Ct. 191, 83 L.Ed.2d 124 (1984) (court may hold a debtor in contempt who continues to refuse to testify following a grant of immunity). *See, also, In re Wazeter,* 209 B.R. 222, 231 (W.D.Mich.1997) (discharge may be denied a debtor who, by invoking the Fifth Amendment, fails to justify his failure to maintain adequate records— 11 U.S.C. § 727(a)(3)); [18] *In re Horridge,* 127 B.R. 798, 799 (S.D.Tex.1991) (same, with regard to 11 U.S.C. § 727(a)(5)); *In re Peklo,* 201 B.R. 331, 333–334 (Bankr.D.Conn.1996) (concluding that a debtor's refusal to testify precluded a fair and effective administration of the estate and constituted cause for dismissal under 11 U.S.C. § 707(a) and such

17. *Accord, In re Ross,* 156 B.R. 272, 275 (Bankr.D.Idaho 1993); *In re Growers Packing Co., Inc.,* 150 B.R. 82, 84 (Bankr.S.D.Fla.1993).

18. "In order to be entitled to the benefit of a discharge in bankruptcy, debtor was required to

fully disclose all information and records necessary to determine the financial condition of the estate." *In re Wazeter,* 209 B.R. 222, 231 (W.D.Mich.1997).

dismissal does not impose an impermissible punishment on the debtor for invoking the Fifth Amendment). *Compare, In re Brady,* 154 B.R. 82, 86 (Bankr.W.D.Mo.1993) (finding debtor to be nondischargeable under 11 U.S.C. § 523(a)(6) despite Fifth Amendment invocation); *In re Lederman,* 140 B.R. 49 (Bankr.E.D.N.Y.1992) (same).[19]

With regard to the Debtor's argument pursuant to the Sixth Amendment, effective assistance of counsel, the District Court has previously held that "[f]or the chilling effect described above to take place, the Trustee would have to be entitled to continuing access to the files created by [the Debtor's] criminal defense counsel to limit his written work product." *Blinder, supra* at 795.

This Court concludes that neither the Fifth nor the Sixth Amendment prohibit production of the documents at issue.

## CONCLUSION

Accordingly, it is

ORDERED that the "Trustee's Motion for Turnover or Disclosure of Recorded Information Relating to Debtor's Property or Financial Affairs" filed February 12, 1997 is GRANTED.

---

**19.** "Moreover, in § 727(a)(6)(B) Congress specifically preserved a debtor's rights to raise the privilege against self-incrimination, absent a grant of immunity, with respect to oral examination and testimony without prejudice to the right to a discharge. The lack of a similar provision in § 523 leads to the inescapable conclusion that none was intended." *In re Lederman,* 140 B.R. 49, 53 (Bankr.E.D.N.Y.1992).