**Sidney SAMUELS et al., Plaintiffs,**

v.

**David T. MITCHELL et al., Defendants.**

**No. C 91–20377 RMW (EAI).**

United States District Court,
N.D. California.

April 12, 1994.

Robert Kaplan, Jonathan Levine, of Kaplan & Kilsheimer, Blake Harper, of Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for plaintiffs.

Tim Scott, Aileen Arrieta, James Jacobs, of Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for defendants.

### ORDER RE IN CAMERA REVIEW OF DOCUMENTS WITHHELD BY SEAGATE

INFANTE, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiffs' Motion to Compel Production of Withheld Documents was heard on January 24, 1994. Defendants contend that the documents plaintiffs seek are protected from disclosure by the attorney-client privilege or the work-product doctrine. Plaintiffs generally describe the withheld documents as: documents disclosed to third parties; documents created for a business purpose; documents prepared by Seagate that were not transmitted to any attorney; and documents concerning disputes with Control Data that were sent to, received from, or generated by third parties.

Pursuant to the court's order of January 24, 1994, defendants submitted copies of the contested documents to the court for *in camera* inspection. The contested documents are described in privilege logs which include the following information: (a) the date the document was generated, prepared, or dated; (b) the attorney involved; (c) the client involved; (d) the author; (e) the recipient; (f) persons or identities known to have been furnished or informed of the substance of the document; (g) the nature of the document and the subject matter; and (h) the privilege asserted. Defendants also submitted the declaration of James A. DiBoise, counsel for Seagate, in support of their claims of privilege.

Plaintiffs challenge most of defendants' claims of privilege on the grounds that the purportedly privileged documents were disclosed to third parties or prepared for a business purpose rather than in anticipation of litigation. These challenges are readily resolved by reviewing the documents *in camera* and applying basic principles of the attorney-client privilege and the work product doctrine.

However, plaintiffs' challenges to a particular group of documents prepared by Seagate or Seagate's outside counsel in connection with a private arbitration proceeding (the "Arbitration") between Seagate and a second company, Control Data, warrant further consideration. This latter group of Arbitration documents generally relate to Seagate's acquisition of Control Data, and were exchanged among Seagate, outside counsel, and accounting firm Ernst & Young. During the Arbitration hearing, Ernst & Young appeared to respond to the neutral arbitrator's questions regarding Seagate's written submissions, but was not sworn in as a witness.[1] According to Mr. DiBoise, it was necessary for his law firm to consult with independent expert Ernst & Young regarding issues in the arbitration and to prepare Seagate's objections to Control Data's balance sheet.[2]

## II. ANALYSIS

■ Pursuant to Rule 26(b)(1), Fed.R.Civ. P., parties may obtain discovery of all matters, not privileged, relevant to the subject matter of the litigation and reasonably calculated to lead to the discovery of admissible evidence. As with all evidentiary privileges, the burden of demonstrating the existence of an evidentiary privilege rests on the party asserting the privilege. *See e.g. In re Horowitz,* 482 F.2d 72 (2nd Cir.1973).

### A. Attorney–Client Privilege

■ Plaintiffs essentially assert that Seagate waived its claim of attorney-client privi-

---

**1.** Defendants have agreed to produce the documents actually submitted during the Arbitration Procedures.

**2.** It is unclear whether Ernst & Young was retained by Seagate or by Wilson, Sonsini.

lege as to the Arbitration documents by disclosing the documents to a third party, Ernst & Young. However, several courts have held that the attorney-client privilege extends to communications with "one employed to assist the lawyer in the rendition of professional legal services." *See e.g., Linde Thomson Langworthy Kohn & Van Dyke v. RTC,* 5 F.3d 1508, 1514 (D.C.Cir.1993). A line of cases beginning with *United States v. Kovel,* 296 F.2d 918, 922 (2nd Cir.1961), has recognized that the attorney-client privilege is not automatically waived if an otherwise privileged document is disclosed to a third party. In *Kovel,* an accountant was employed by a law firm specializing in tax law. A grand jury investigating one of the law firm's clients subpoenaed the accountant to appear, but the accountant refused to answer any questions regarding communications by the client to the accountant. The court analogized an accountant to a foreign language interpreter, stating:

> ... we can see no significant difference between a case where the attorney sends a client speaking a foreign language to an interpreter to make a literal translation of the client's story; a second where the attorney, himself having some little knowledge of the foreign tongue, has a more knowledgeable non-lawyer employee in the room to help out; a third where someone to perform that same function has been brought along by the client; and a fourth where the attorney, ignorant of the foreign language, sends the client to a non-lawyer proficient in it, with instructions to interview the client on the attorney's behalf and then render his own summary of the situation, perhaps drawing on his own knowledge in the process, so that the attorney can give the client proper legal advice ...

This analogy of the client speaking a foreign language is by no means irrelevant to the appeal at hand. Accounting concepts are a foreign language to some lawyers in almost all cases, and to almost all lawyers in some cases. Hence the presence of an accountant, whether hired by the lawyer or by the client, while the client is relating a complicated tax story to the lawyer, ought not destroy the privilege, any more than would that of the linguist in

the second or third variations of the foreign language theme discussed above; the presence of the accountant is *necessary, or at least highly useful,* for the effective consultation between the client and the lawyer which the privilege is designed to permit.

*Kovel,* 296 F.2d at 918 (1961) (emphasis added). The court also emphasized, "what is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer." *Id.* Similarly, in *United States v. Jacobs,* 322 F.Supp. 1299 (C.D.Cal.1971), the court held that a memo from a lawyer to an accountant stating facts in confidence (which had been related to the attorney by the client) for the purpose of the lawyer obtaining the accountant's assistance in rendering a legal opinion was protected by the attorney-client privilege. *See also, United States v. Cote,* 456 F.2d 142 (8th Cir.1972) (Court held that attorney-client privilege attached to information contained in the accountant's workpapers prepared at the request of client's attorney for purposes of giving legal advice. However, the court held that the client waived the privilege by filing amended tax returns containing privileged information.)

Courts have further held that the privilege logically encompasses reports prepared by third parties at the request of the attorney or client where the purpose of the reports was to put in usable form information obtained from the client. *See e.g., FTC v. TRW, Inc.,* 628 F.2d 207 (D.C.Cir.1980). In *United States v. Judson,* 322 F.2d 460 (9th Cir.1963), the court considered whether a net worth statement prepared by accountants retained by the client and turned over to the client's attorney was protected by the attorney-client privilege. The Ninth Circuit cited to *Kovel, supra,* and held:

> This [net worth] statement was prepared at the attorney's request, in the course of an attorney-client relationship, for the purpose of advising and defending his clients. The accountants' role was to *facilitate* an accurate and complete consultation between the client and the attorney about the former's financial picture. The lower court was correct in determining that

these documents [the net worth statement and various preliminary memoranda which culminated in the net worth statement] constituted confidential communications within the attorney-client privilege.

*Judson,* 322 F.2d at 462 (emphasis added).

■ If privileged documents or communications are disclosed to accountants for a purpose other than securing legal advice, the privilege is waived. *In re Horowitz, supra; Diasonics Secur. Lit.,* 1986 WL 53402 (N.D.Cal.1986). In *Horowitz,* an accountant was served with a *subpoena duces tecum* compelling production of documents reflecting attorney-client communications which had been transmitted to the accountant. As a preliminary matter, the *Horowitz* court held that the attorney-client privilege was not inapplicable solely because the documents were in the accountant's possession. However, the court ultimately concluded that the documents at issue were not protected because the legal advice had already been obtained from the lawyers and the communications were subsequently made available by the client to the accountant for purposes unrelated to the seeking of legal advice.

Similarly, the *Diasonics* court held that documents prepared by or disclosed to Diasonic's accounting firm, Arthur Young, in connection with Diasonics' acquisition of two companies were not protected by the attorney-client privilege because the documents were disclosed to Arthur Young for accounting purposes rather than for securing legal advice. *See also, American Health Systems, Inc. v. Liberty Health System, et. al.,* 1991 WL 42310 (E.D.Pa.1991) ("[I]f what is sought is only 'accounting services' or the advice of the accountant, or if what is transmitted is not materially intended to be confidential, no privilege exists.... Since the attorneys' completed opinion constituted the legal advice on the antitrust issue, the subsequent disclosure of that advice to L & H [accounting firm] as a health case consultant constituted a waiver of any attorney-client privilege."); *Gramm v. Horsehead Industries, Inc.,* 1990 WL 142404 (S.D.N.Y.1990) (attorney-client privilege is waived by disclosure of privileged document to client's accountants, "unless the transmission was for the purpose of enabling the accountant to assist the attorney in rendering legal services.")

Having reviewed the Arbitration documents, the Court concludes that Seagate waived its attorney-client privilege as to the following documents because it appears that Seagate disclosed the documents to Ernst & Young to keep Ernst & Young up-to-date on the Arbitration, and not to obtain Ernst & Young's assistance in rendering legal advice: *Log 1*—# 2 and # 131; *Log 2*—# 41, # 63, # 66, # 73; *Log 4*—# 16; *Log 5*—# 60, # 61, and # 69.[3]

### B. Work Product

Plaintiffs assert that the Arbitration documents are not protected by the work product doctrine because Ernst & Young acted as a testifying expert for Seagate in the arbitration, and therefore whether the documents are discoverable is governed by Rule 26(b)(4), Fed.R.Civ.P., for testifying experts rather than the traditional work product doctrine of Rule 26(b)(3). Plaintiffs also assert that the documents are discoverable because they were never intended to be kept confidential.

Defendants respond that plaintiffs are not entitled to the requested information under Rule 26(b)(4) for three reasons. First, defendants assert that Rule 26(b)(4) does not apply because the arbitration was not conducted pursuant to the Federal Rules, but was an informal proceeding in which *no* discovery of experts was contemplated or allowed. Second, defendants assert that Ernst & Young was never sworn as a witness in the Arbitration, and only appeared at the hearing to respond to the neutral arbitrators' questions regarding Seagate's written submissions. Third, defendants assert that even if Rule 26(b)(4) applies, defendants have already complied with subsection (b)(4) by providing plaintiffs with the identity, subject matter and facts and opinions of their alleged testifying expert when they produced the arbitration submissions.

---

**3.** Although these documents are not protected under the attorney-client privilege, they are pro-

tected from disclosure on a claim of work product immunity as discussed below.

*Rule 26(b)(3): Work Product*

■ Rule 26(b) of the Federal Rules of Civil Procedure provides in relevant part: (3) **Trial Preparation: Materials.** Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Since arbitrations are adversarial in nature and can be fairly characterized as "litigation" within the meaning of Rule 26(b)(3), documents prepared by or for a party in connection with arbitrations should ordinarily be protected by the work product doctrine. *See International Insurance Co. v. Peobody International Corp.*, 1988 WL 58611 (N.D.Ill. 1988); *Forbo–Giubiasco, SA v. Congoleum*, No. 78 Civ. 5390 (MEL), slip op. at p. 1 (S.D.N.Y. December 21, 1981).

*Rule 26(b)(4)—Trial Preparation: Experts*

The definition of "work product" in Rule 26(b)(3) does not include documents generated or consulted by experts retained in connection with litigation. Whether such materials are discoverable is specifically governed by Fed.R.Civ.P. 26(b)(4)(A)(i). *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. 533 (N.D.Cal.1987). Subsection (b)(4) specifically provides for discovery of facts known and opinions held by experts the adverse party expects to call as a witness at trial that are acquired or developed in anticipation of litigation or for trial. Many courts have construed Subsection (b)(4) to authorize orders compelling experts to disclose not only the opinions they hold, but also all the documents the expert generated or examined in the process of forming those opinions. *See Hewlett–Packard*, 116 F.R.D. at 536 and cases cited therein. Upon motion, the court may order further discovery by other means. Fed.R.Civ.P. 26(b)(4).

■ The critical issue in the present case is whether Ernst & Young acted as a "testifying expert" for purposes of Rule 26 during the Arbitration. Ernst & Young's participation in the Arbitration does not rise to the level of a "testifying expert." The Arbitration Procedures make clear that Seagate and Control Data did not intend to follow all the typical procedures governing federal civil litigation. No discovery was contemplated or allowed in the course of the Arbitration; the parties to the arbitration presented their case primarily through written submissions; and the proceedings and submissions were intended to be kept confidential. Moreover, Ernst & Young appeared at the Arbitration hearing to respond to the neutral arbitrator's questions regarding Seagate's written submissions, and was not subject to cross-examination by an adversary. In summary Plaintiffs' requested expansion of subsection (b)(4) to arbitration proceedings appears not only unintended by the federal rule makers and unprecedented, but unjustified for all the foregoing reasons.[4]

*Waiver*

■ Having determined that subsection (b)(3) and not subsection (b)(4) of Rule 26 applies, the next question is whether defendants waived such protection by disclosing protected documents to Ernst & Young.[5] Notwithstanding plaintiffs' assertion to the contrary, the work product privilege is not automatically waived by any disclosure to third persons. *In re Sealed Case*, 676 F.2d 793 (D.C.Cir.1982). Rather, the courts generally find a waiver only if the disclosure "substantially increases the opportunity for potential adversaries to obtain the informa-

---

4. There is no evidence that Ernst & Young has been designated as a "testifying expert" for purposes of the present litigation.

5. There is no dispute regarding documents actually submitted during the Arbitration Procedures since defendants have agreed to produce such documents.

tion." *In re Grand Jury,* 561 F.Supp. 1247, 1257 (E.D.N.Y.1982); *United States v. American Telephone and Telegraph Co.,* 642 F.2d 1285 (D.C.Cir.1980); *In re Doe,* 662 F.2d 1073 (4th Cir.1981) ("To effect a forfeiture of work product protection by waiver, disclosure must occur in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material.")

For example, in *Gramm, supra,* the court held that defendants did not waive their work product protection to a document transmitted to the company's outside auditors because such a disclosure "cannot be said to have posed a substantial danger at the time that the document would be disclosed to plaintiffs." *Gramm* at 142405. *See also, In re Pfizer Inc. Securities Litigation,* 1993 WL 561125 (S.D.N.Y.1993).

In contrast, the *Diasonics* court preliminarily held that documents prepared by or disclosed to Diasonic's accounting firm, Arthur Young, were not protected by the work product doctrine, and even if the documents were initially entitled to such protection, the protection was waived by disclosure to the accountants. The court reasoned:

> while disclosure to one with a common interest under a guarantee of confidentiality does not necessarily waive the protection, *United States v. Gulf Oil Corp.,* [760 F.2d 292 (Temp.Emer.Ct.App.1985) ], the relationship between public accountant and client is at odds with such a guarantee because the public accountant has responsibilities to the creditors, stock holders, and the investing public which transcend the relationship with the client. *See, United States v. Arthur Young & Co.,* [465 U.S. 805, 817–18,] 104 S.Ct. 1495, 1503 [, 79 L.Ed.2d 826] (1984). Because it appears that Arthur Young was acting as a public accountant rather than as a consultant in this case we find the work product protection is inapplicable to these documents.

However, *Diasonics* is distinguishable from the present case in that Ernst & Young was not acting as Seagate's public accountant during the arbitration, but as a consultant.

Like *Gramm,* the disclosure of work product to Ernst & Young in the present case cannot be said to have posed a substantial danger at the time that the documents at issue would be disclosed to an adversary. There is no evidence that Seagate intended to disclose or inadvertently disclosed the communications among Seagate, its counsel and Ernst & Young to any adversary. Rather, counsel for Seagate, Mr. DiBoise, states in his declaration, "To the best of my recollection, I made every effort to keep all discussions with Ernst & Young about the arbitration confidential, and to guarantee that documents created by or sent to Ernst & Young in the course of the arbitration preparation would not be disclosed to Control Data, unless and until they were included in a formal submission of an arbitration brief or letter." For the foregoing reasons, the court finds that the Arbitration documents are protected by the work product doctrine, Seagate intended at all times to keep the documents confidential, and Seagate did not waive work product protection.

### III. CONCLUSION

Having carefully reviewed the contested documents submitted *in camera,* and having applied the principles set forth above, plaintiffs' Motion to Compel is GRANTED IN PART AND DENIED IN PART as follows.

1. The following documents are protected by the attorney-client privilege: *Log 1*— # 98, # 100, # 101, # 106, # 122; *Log 2*— # 23, # 33, # 34, # 48, # 56, # 87, # 88; *Log 3*—# 21, # 28, # 29, # 30, # 45, # 50, # 53, # 65, # 78, # 87, # 105, # 106, # 107, # 109, # 114, # 117; *Log 5*—# 5, # 6, # 10, # 34.

2. The following documents are protected by the work product doctrine: *Log 1*—# 2, # 39, # 40, # 41, # 43, # 44, # 108, # 115, # 117, # 122, # 126, # 129, # 130, # 131, # 132, # 133, # 135, # 140, # 143, # 144, # 145, # 148, # 150, # 151; *Log 2*—# 24, # 41, # 58, # 63, # 66, # 69, # 73, # 76, # 82, # 94, # 98; *Log 3*—# 102; *Log 4*— # 16; *Log 5*—# 31, # 60, # 61, # 69.

3. The following documents are protected by both the attorney-client privilege and work product doctrine: *Log 1*—# 35, # 38, # 125, # 142; *Log 2*—# 67, # 81; *Log 3*— # 1, # 13, # 14, # 15, # 16, # 17, # 18, # 19,

#20, #22, #23, #24, #25, #26, #27, #35, #36, #37, #38, #39, #40, #41, #42, #44, #46, #48, #49, #52, #54, #64, #67, #72, #74, #75, #79, #85, #86, #90, #92, #111, #112, #115; *Log 4*—#10, #17, #18.

4. Seagate has failed to establish the requisite elements for a claim of attorney-client privilege or work product immunity as to the following documents: *Log 1*—#10 and #95, *Log 2*—#58 and #60.

WHEREFORE, IT IS HEREBY ORDERED:

1. Within seven (7) days of receipt of this Order, counsel for Seagate shall produce the documents identified in paragraph No. 4 above to counsel for plaintiffs.

2. The documents submitted *in camera* shall be returned to counsel for defendants forthwith.

IT IS SO ORDERED.