IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-20087
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM GIBBS CAMPBELL, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

January 3, 1996

Before KING, STEWART, and PARKER, Circuit Judges.

PER CURIAM:

William Gibbs Campbell, Jr. appeals his conviction for bankruptcy fraud on the grounds that evidence was admitted in violation of the attorney-client privilege and the hearsay rule, and that the erroneous admission of this evidence was not harmless error.  Finding no reversible error, we affirm Campbell's conviction and sentence.


## I. BACKGROUND

After a jury trial, William Gibbs Campbell, Jr. ("Campbell") was convicted of one count of bankruptcy fraud in violation of 18

U.S.C. § 152 and sentenced to a one-year term of imprisonment, which was suspended, and five years of supervised release. He was also fined $5,000 and ordered to pay $56,000 in restitution.

Campbell was the general partner of a limited partnership, 3700 WFA Limited, which owned Wakeforest Apartments ("the Partnership"). Michael C. O'Connor ("O'Connor"), Campbell's personal attorney, was the sole limited partner. Barbara M. Rogers ("Rogers"), was the attorney for the Partnership. The Partnership filed a petition for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of Texas on June 30, 1986. Rogers signed the bankruptcy petition, and Campbell, as general partner, signed the verification.

On August 31, 1987, Campbell wrote a check for $96,000 to the Partnership from the First City Bank account of Wakeforest Management Company, a separate business entity from the Partnership. At the time Campbell wrote the check, the First City Bank account of Wakeforest Management Company had a balance of $301.73. The check was deposited into the Partnership's account at Allied Bank. Later, the $96,000 check was returned unpaid for insufficient funds.

On the same day, Campbell arranged a wire transfer of $56,000 from the Partnership's Allied Bank account to the Guadalupe County Abstract Company's account at the Nolte National Bank of Seguin ("Nolte Bank"). Campbell's accountant recorded the $56,000 payment to the Nolte Bank account on Campbell's personal ledger, not on the business records of the Partnership.

2

Campbell used the $56,000 he had transferred from the Partnership's Allied Bank account to pay off a $47,000 real estate note on his personal residence at 284 Turtle Lane in Seguin, Texas. O'Connor, the limited partner in the Partnership and Campbell's personal attorney, learned of the origin of the $56,000 in mid-September 1987. Upon this discovery, O'Connor sent Campbell a letter questioning Campbell's actions, and explaining that "as an attorney, I hope you understand that I must avoid even the appearance that I participated in transferring funds out of the Wakeforest bankruptcy."

On September 2, 1987, one of the Partnership's creditors moved to convert the bankruptcy Chapter 11 reorganization proceeding into a Chapter 7 liquidation. On October 27, 1987, the bankruptcy court entered an order converting the petition to Chapter 7 and appointed Lowell T. Cage ("Cage") as the Chapter 7 trustee for the Partnership.

Cage wrote a letter to Campbell on December 4, 1987, requesting an explanation for the $56,000 transfer and asking what, if any, authority, had the court given for making such a transfer. Campbell never responded to Cage's letter, nor did Cage discover an order authorizing the transfer. Cage brought this matter to the attention of the office of the United States Trustee and requested that appropriate action be taken. Campbell was then indicted and prosecuted for bankruptcy fraud.

At Campbell's bankruptcy fraud trial, the government called Rogers, the Partnership's attorney, as a witness. Campbell

objected on the grounds of the attorney-client privilege. After argument, the court ruled that an attorney-client relationship had not been established between Rogers and Campbell personally and that Rogers's contact with Campbell had been solely as the Partnership's attorney, and the court allowed Rogers to testify, although it reserved judgment on individual exhibits. The government then questioned Rogers about the attorney-client privilege, seeking to establish that Cage, the trustee for the Partnership, had waived the attorney-client privilege on behalf of the partnership. The government also sought to introduce a letter from Cage to Rogers waiving the privilege. Campbell's counsel objected to both the testimony and the letter as hearsay. The court eventually allowed the testimony and admitted the letter under the residual hearsay exception.

## II. STANDARD OF REVIEW

"The application of the attorney-client privilege is a question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents." United States v. Neal, 27 F.3d 1035, 1048 (5th Cir. 1994) (internal quotations omitted), cert. denied, 115 S. Ct. 1165 (1995). "The clearly erroneous standard of review applies to the district court's factual findings. We review the application of the controlling law de novo." Id.

We review the district court's rulings on the admissibility of evidence for an abuse of discretion. United States v. McAfee, 8 F.3d 1010, 1017 (5th Cir. 1993); United States v. Jardina, 747

4

F.2d 945, 950 (5th Cir. 1984), <u>cert. denied</u>, 470 U.S. 1058 (1985).  In determining whether an erroneous admission of evidence is harmless error, the court of appeals must decide whether the inadmissible evidence actually contributed to the jury's verdict; we will not reverse unless the evidence had a substantial impact on the verdict.  <u>United States v. Gadison</u>, 8 F.3d 186, 192 (5th Cir. 1993).

### III. DISCUSSION

**A.   Waiver of the Attorney-Client Privilege**

Campbell contends that the district court erroneously concluded that Cage, the Chapter Seven bankruptcy trustee for the Partnership, could waive the attorney-client privilege on behalf of the Partnership.  He argues that a limited partnership is more like an individual than a corporation; therefore, the Supreme Court's ruling that a bankruptcy trustee may waive the privilege on behalf of a corporation is inapplicable.  <u>See</u> <u>Commodity Futures Trading Commission v. Weintraub</u>, 471 U.S. 343, 358 (1985).  In response, the government asserts that Cage, as trustee, had authority to waive the Partnership's attorney-client privilege.  Additionally, the government points out that Rogers at no time established a personal attorney-client relationship with Campbell.

In <u>Commodity Futures Trading Commission v. Weintraub</u>, 471 U.S. 343 (1985), the Supreme Court held that "the trustee of a corporation in bankruptcy has the power to waive the

corporation's attorney-client privilege. . . ." Id. at 358. The Court asserted first that, for solvent corporations, the power to waive the privilege rests with the officers and directors. Id. at 348. It then reasoned that control of a corporation's attorney-client privilege in bankruptcy belongs to the party having the most analogous duties to the solvent corporation's officers and directors. Id. at 351. The Court concluded that the duties of the bankruptcy trustee are most similar to the duties of the officers and directors of a solvent corporation; therefore, the bankruptcy trustee controls the privilege. Id. at 353.

In holding that the bankruptcy trustee may waive the attorney-client privilege on behalf of a corporation, the Court cautioned that a bankrupt individual presents a different situation:

> [O]ur holding today has no bearing on the problem of individual bankruptcy, which we have no reason to address in this case. As we have stated, a corporation, as an inanimate entity, must act through its agents. When the corporation is solvent, the agent that controls the corporate attorney-client privilege is the corporation's management. Under our holding today, this power passes to the trustee because the trustee's functions are more closely analogous to those of management outside of bankruptcy than are the functions of the debtor's directors. An individual, in contrast, can act for himself; there is no "management" that controls a solvent individual's attorney-client privilege.

Id. at 356. A limited partnership, like a corporation, is an inanimate entity that can act only through its agents. Accordingly, the same rule that applies to corporations in bankruptcy should apply to a bankrupt limited partnership. Thus,

6

we conclude that the district court did not err in holding that Cage, as the bankruptcy trustee of the debtor-Partnership, had the authority to waive the attorney-client privilege on behalf of the Partnership.  See Hopper v. Frank, 16 F.3d 92, 96 (5th Cir. 1994) (stating that "there is no logical reason to distinguish partnerships from corporations or other legal entities in determining the client a lawyer represents" (internal quotations omitted)); In re Bieter Co., 16 F.3d 929, 935 (8th Cir. 1994) (reasoning that the rules regarding the attorney-client privilege of corporations are no less instructive when applied to a partnership or some other client entity not an individual).

**B.   Admission of Exhibit 90**

Campbell additionally argues that the district court erred in admitting, over his objection, the government's Exhibit 90, which was a letter from Cage to Rogers in which Cage acknowledged waiving the attorney-client privilege on behalf of the Partnership.  The district court admitted Exhibit 90 under the residual exception to the hearsay rule, Federal Rule of Evidence 803(24).  Campbell argues that the letter was not admissible under the residual hearsay exception.

The government responds that, when Campbell objected to Rogers's testimony on the basis of the attorney-client privilege, it offered Exhibit 90 to demonstrate that any such privilege had been waived.  The government argues that the district court properly considered the letter in determining whether Cage had

waived the Partnership's attorney-client privilege, even if the letter was hearsay not within any exception, because, under Federal Rule of Evidence 104(a), the court is not bound by the rules of evidence in determining a preliminary question such as the existence of a privilege.

First, we agree with the government that the district court could have admitted Exhibit 90 as evidence that the Partnership's attorney-client privilege had been waived, without reaching the hearsay analysis. Federal Rule of Evidence 104(a) provides:

> **Questions of admissibility generally.** Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

Fed. R. Evid. 104(a). Therefore, the court could have considered Exhibit 90 to determine whether the attorney-client privilege had been waived even if the letter was hearsay not within any exception.

Second, and in the alternative, we conclude that the district court did not abuse its discretion in admitting Exhibit 90 under the residual hearsay exception of Federal Rule of Evidence 803(24).

Third, even if the district court had erred in admitting Exhibit 90, such error would have been harmless. See United States v. Pepper, 51 F.3d 469, 472 (5th Cir. 1995) (stating that "[i]n determining whether the admission of hearsay evidence was harmless, we must consider the other evidence in the case, and

8

then decide if the inadmissible evidence actually contributed to the jury's verdict").  Rogers testified that she requested and received a letter waiving the Partnership's attorney-client privilege from Cage.  Additionally, the letter's only evidentiary value was in demonstrating waiver of the attorney-client privilege; it had no relation to Campbell's guilt or innocence. Therefore, even had the district court erred in admitting Exhibit 90, such error would have been harmless.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

9