### Mike MEOLI, et al, Plaintiffs,

### v.

### AMERICAN MEDICAL SERVICE OF SAN DIEGO, et al., Defendants.

### & Related Cross–Actions.

### No. CIV.97–1222–BTM(LSP).

United States District Court, S.D. California.

Jan. 9, 2003.

Thomas M. Monson, Miller, Monson, Peshel, Polacek and Hoshaw, Judith M. Finch, Law Office of Judith M. Finch, San Diego, CA, Richard Alan Lucal, Law Offices of Richard A. Lucal, Vista, CA, J. Mark Dunbar, Dunbar and Associates, La Jolla, CA, Brent W. Reden, Miles D. Scully, Gordon and Rees, San Diego, CA, for plaintiffs.

Marc S. Schechter, Butterfield Schechter, A. Kendall Wood, III, Hinchy, Witte, Wood, Anderson and Hodges, San Diego, CA, John Macalester Sherwood, Law Offices of John Macalester Sherwood, San Francisco, CA, for defendants.

Mike Meoli, San Diego, CA, Ronald L. Saathoff, San Diego, CA, Erik M. Windsor, San Marcos, CA, Wayne C. Whitney, Chula Vista, CA, John C. Warrick, Temecula, CA, Traci A. Wagner, San Diego, CA, Eric Vogt, El Cajon, CA, Debra K. Vidaurri, Ramona, CA, Miguel Verdugo, Oceanside, CA, Craig S. Tenma, San Diego, CA, Janet E. Terlouw, Temecula, CA, Matthew M. Thomas, San Diego, CA, Raymond Trussell, Escondido, CA, Craig Usher, Valley Center, CA, Zachary L. Valde, La Mesa, CA, Dorothy E. VanBuskirk, San Diego, CA, Steven Vandewalle, Julian, CA, Tom Venditti, San Diego, CA, Clyde Ada, San Diego, CA, Marsha Adamek, Fremont, CA, Tony Aguilar, Jr., Lakeside, CA, Thomas M. Anglim, San Diego, CA, James R. c/o American Medical Response, Jr., San Diego, CA, Denise Baker, Chula Vista, CA, Craig Balderson, Ramona, CA, Thea Barsalou, San Diego, CA, Darlene S. Bataresh, Temecula, CA, Daniel D. Beebe, Escondido, CA, Russell Belcher, San Diego, CA, Matthew Bergin, Fallbrook, CA, Greg Berry, La Mesa, CA, Colette Berkwick, Temecula, CA, Veryl Blakeley, San Diego, CA, Robert R. Blizzard, Poway, CA, Jim Bold, Oceanside, CA, Steve Braucht, Temecula, CA, Shell Bridges, San Diego, CA, Rick Burger, San Diego, CA, Steve Calderon, Bonita, CA, James D. Carter, Bonita, CA, Jesus Castro, San Diego, CA, Mark Caviness, Saint Louis, MO, John J. Cerruto, San Diego, CA, Cathy Chanley, Ramona, CA, Mike Chasin, San Diego, CA, Nancy J. Clapp, El Cajon, CA, Kimberly A. Clift,

San Diego, CA, Donna Cochran, Chula Vista, CA, Jon N. Coffman, Escondido, CA, Sharon E. Conger, Poway, CA, Leto Contreras, National City, CA, Jeff Conway, San Diego, CA, Ronald W. Crase, Oceanside, CA, Robert W. Cranfield, Bonita, CA, Pam Dastrup, Temecula, CA, Paul Dochmaschewsky, Huntington Beach, CA, Steven P. Duffy, Ramona, CA, Laurie C. Duncan, San Marcos, CA, Thomas M. Duncan, San Marcos, CA, Alfredo Duron, Chula Vista, CA, Bradley J. Dussault, San Diego, CA, Noel A. Edwards, San Diego, CA, Clinton C. Egleston, San Diego, CA, Sean M. Feather, Escondido, CA, Wesley J. Ferracioli, Sunset Beach, CA, Roger Fisher, Carlsbad, CA, Daniel J. Froelich, Temecula, CA, Carolyn R. Gain, Alpine, CA, Edward, San Diego, CA, Terri Glass, El Cajon, CA, Douglas L. Hagan, Encinitas, CA, Debra Hahn, Valley Center, CA, Evelyn Hallford, El Cajon, CA, Joseph E. Hand, Alpine, CA, David Helman, Temecula, CA, Baryic A. Hunter, San Diego, CA, Brent C. Hufford, San Diego, CA, Denise Hunter, Poway, CA, Pam Hunter, Spring Valley, CA, Jon D. Husby, San Diego, CA, Duane Ingerson, Chula Vista, CA, Kim Isaac, San Diego, CA, Peter S. Jaeb, Vista, CA, Kevin R. Johnson, Vista, CA, Wayne D. c/o American Medical Response, Lemon Grove, CA, Orin Jones, Palo Verde, CA, Richard P. Jones, Sugarland, TX, Daniel S. Kalberg, Oceanside, CA, Mark Karlin, Murrieta, CA, Steven M. Langenfeld, San Diego, CA, Dominic Liberatore, Greenville, NC, Gregory M. Lloyd, Ramona, CA, Justin Loffredo, Escondido, CA, Troy D. Loreth, Oceanside, CA, Sandra Lyon, El Cajon, CA, Ramon Maciel, Spring Valley, CA, Ramin Mahjoub, San Diego, CA, Kathleen c/o AMS of San Diego, San Diego, CA, Robert Mayorga, Clovis, CA, Cathy McGee, San Diego, CA, Ruth McGuire, San Diego, CA, Mitchell J. Mendler, Spring Valley, CA, Michael R. Meoli, San Diego, CA, Salvador Meza, National City,

CA, Brian S. Mitchell, Oceanside, CA, Martin G. Morikado, San Diego, CA, Robert Morrison, Oceanside, CA, Ron Neenan, San Diego, CA, Craig R. Newell, San Diego, CA, Mark D. Norman, Los Angeles, CA, Timothy S. O'Malley, Carlsbad, CA, Amy Osborne, La Mesa, CA, Dave Picone, El Cajon, CA, Edward Galbicka, San Diego, CA, John R. Pringle, Jr., San Diego, CA, Karen E. Ramirez, San Ysidro, CA, Dulice Reden, Carlsbad, CA, Eric K. Rheinhardt, San Marcos, CA, Maria Rincon, National City, CA, Allan D. Rivas, San Diego, CA, Dave Rivas, San Diego, CA, Donnie Rivas, Temecula, CA, Rick Rod, San Diego, CA, Shaun Rohrbach, San Diego, CA, Charles Romero, San Diego, CA, Sally A. Safarik, San Marcos, CA, Deanna Sawdey, Winchester, CA, Jeff Schroeder, Vista, CA, Debra Schroeder, Vista, CA, David A. Scigliano, Bonita, CA, Gregory G. Scott, Salt Lake City, UT, Rafael Senior, Imperial Beach, CA, Karen Sharp, Poway, CA, Mark J. Shtino, Santee, CA, Lisa Shurilla, Poway, CA, Ellen Simpkins, Chula Vista, CA, Nico K. Simponis, Las Vegas, NV, Dean Sipes, Jamul, CA, Sharon E. Smith, Poway, CA, Guillermo Soto, San Diego, CA, Brett D. Souza, Carlsbad, CA, Rebecca Spradle, San Diego, CA, Randy Stark, San Diego, CA, pro se.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PROTECTIVE ORDER LIMITING USAGE OF EXHIBIT 128

PAPAS, United States Magistrate Judge.

### *INTRODUCTION*

This action involves the alleged misappropriation of funds belonging to the San Diego Medical Association ("SDMA") paramedics' 401k retirement plan (the "Plan"). Defendants Stanley Kaufman,

Robert Naify, Excelsior Ambulance Co., Inc. ("Excelsior"), James Kaufman, Larry Ward, Ron White, KWBB Management, Inc. fka Kaufman Ward Services, Inc. ("KWBB"), K.W.P.H. Enterprises, Inc. dba American Ambulance, and KARD (collectively referred to hereafter as the "Appearing Defendants") request the Court issue a protective order limiting the usage of a document identified as "Exhibit 128," which was discovered in the files of Defendant American Medical Services of San Diego ("AMS–SD"), a bankrupt limited partnership that is unrepresented in this action. Plaintiffs oppose. Briefs were filed in support of and in opposition to the Appearing Defendants' motion and, at the Court's request, supplemental briefs were also filed by the parties. On October 9, 2002, a hearing was held before Magistrate Judge Leo S. Papas. In attendance were Richard A. Lucal, Esq. and Joe B. Cordileone, Esq. on behalf of Plaintiffs, and Julia A. Nickerson, Esq. and A. Kendall Wood, Esq. on behalf of the Appearing Defendants.

The Court has reviewed the parties' briefs, supporting exhibits and the Court's own records and considered the oral arguments presented by counsel during the hearing. On October 9, 2002, the Court issued a minute order ruling on the motion with the indication this written order would follow. Pursuant to the Court's minute and this written order, the Appearing Defendant's motion to limit the usage of "Exhibit 128" is DENIED without prejudice.

### FACTUAL BACKGROUND

During the mid–1990s AMS–SD, a limited partnership, provided paramedic services under contract with the City of San Diego. AMS–SD paramedics formed SDMA, a collective bargaining unit which yielded the Plan. Defendant and Counter-

claimant Stanley Kaufman was employed by AMS–SD as an accounting manager and also served as a trustee for the Plan. Plaintiffs contend AMS–SD, Stanley Kaufman, and the other Appearing Defendants misappropriated the Plan's funds to pay for operating expenses and to make improper payments to, or for the benefit of, other defendants.

In 1997 AMS–SD ceased operations and by early 1998 filed bankruptcy under Chapter 7. In connection with the bankruptcy proceedings, AMS–SD documents, the majority of which were in files maintained at a storage facility in Fresno, California, were turned over to the control of the bankruptcy trustee. The trustee relocated approximately one-third of the documents to San Diego. The rest remained in Fresno.

In 1999 the bankruptcy trustee requested all AMS–SD documents be destroyed. Plaintiff Mike Meoli objected due to this litigation. The documents in AMS–SD files, therefore, were turned over to the custody of Mr. Meoli's counsel Richard A. Lucal (hereafter "Mr. Lucal"). The trustee released the documents located in San Diego directly to Mr. Lucal. Documents that were still in Fresno were released to Mr. Lucal after review by counsel for the Appearing Defendants.

In December 2001, during the deposition of Stanley Kaufman, Mr. Lucal produced the document that has since been referred to as "Exhibit 128." Mr. Lucal represents to the Court that Exhibit 128 was discovered in the AMS–SD files that were released to him by the trustee in bankruptcy. Exhibit 128 is a memorandum dated October 7, 1996, from attorney Miles Scully to Ron White, an officer of KWBB and a defendant in this action. The memorandum indicates a carbon copy was sent to "Owners." The parties agree the owners referenced in the memorandum are

KWBB and Excelsior, the general and limited partners of AMS–SD, the limited partnership.

The Appearing Defendants now seek a protective order with regard to Exhibit 128, on two basis. First, that the document is a confidential attorney-client privileged communication that was inadvertently disclosed to third parties and, second, that the memorandum is protected as attorney work-product.

## GOVERNING LAW

■■■ In cases involving the adjudication of federal rights, questions of attorney-client privilege are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501. State privilege law applies to purely state law claims brought in federal court pursuant to diversity jurisdiction. *Id.* In cases where state law claims are pendent to federal question claims, as is the case here, claims of privilege are determined under federal law. See *Burrows v. Redbud Community Hosp. Dist.*, 187 F.R.D. 606, 608 (N.D.Cal.1998), citing *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*, 671 F.2d 100, 104 (3rd Cir.1982).

■■■ Unlike the attorney-client privilege, the work-product doctrine is governed by a uniform federal standard even in diversity cases. *Dawson v. New York Life Ins. Co.*, 901 F.Supp. 1362, 1367 (N.D.Ill.1995).

## DISCUSSION

### I. AMS–SD, KWBB & Excelsior Jointly Hold Privileges as to Exhibit 128

#### A. Exhibit 128 Was Communicated in the Course of an Attorney–Client Relationship

■■■ The attorney-client privilege is recognized under federal law, as "the oldest of the privileges for confidential communications known to the common law." See *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Courts long have viewed its central concern as one "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* The attorney-client privilege attaches to "(1) communications (2) made in confidence (3) by the client (4) in the course of seeking legal advice (5) from a lawyer in his capacity as such, and applies only (6) when invoked by the client and (7) not waived." *United States v. Abrahams*, 905 F.2d 1276, 1283 (9th Cir.1990), overruled in part on other grounds by *United States v. Jose*, 131 F.3d 1325, 1329 (9th Cir.1997). The privilege protects both the giving of information to the lawyer, as well as the giving of professional advice by the lawyer. *Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980).

In determining whether Exhibit 128 is an attorney-client privileged communication, the Court must initially ascertain whether the memorandum was communicated in the course of an attorney-client relationship and, if so, what individuals or entities were parties to that relationship. The Appearing Defendants initially contended an attorney-client relationship existed between Mr. Scully and the memorandum's recipients by virtue of his involvement in a prior related case before this Court [*(San Diego Medic Assoc. v. American Medical Services of San Diego*, Case No. 96CV1544–BTM(JAH)]. It is apparent from the Court's files that Mr. Scully was retained by AMS–SD as defense counsel in the prior case. However, neither KWBB nor Excelsior were parties to the action at the time the memorandum was written, and thus, it

was not clear from the Court's files that Mr. Scully represented either KWBB or Excelsior.

In response to the Court's request for additional briefing and evidence regarding Mr. Scully's relationship with KWBB and Excelsior, the Appearing Defendants proffered the declaration of Mr. Scully, in which Mr. Scully states he also represented KWBB and Excelsior at the time the memorandum was prepared. Declaration of Miles Scully, ¶ 4. According to the declaration, the memorandum was communicated by Mr. Scully to KWBB and Excelsior in the course of his representation. *Id.* at ¶ 6. Mr. White, the third recipient of the memorandum, was an officer and agent of KWBB at the time. Declaration of Ron White, ¶ 4. As a result, communications between Mr. White and KWBB's counsel would also be subject to KWBB's attorney-client privilege. See *Upjohn Co.,* 449 U.S. at 395, 101 S.Ct. 677. Plaintiffs did not contradict Mr. Scully's declaration. Therefore, the Court is satisfied that Exhibit 128 was communicated in the course of an attorney-client relationship between Mr. Scully and KWBB and Excelsior.

Although Mr. Scully was AMS–SD's counsel when the memorandum was drafted, the Appearing Defendants deny the memorandum is an attorney-client communication between Mr. Scully and AMS–SD. As discussed further below, Plaintiffs assert AMS–SD's bankruptcy trustee waived privileges on behalf AMS–SD and the other defendants by virtue of his releasing Exhibit 128 to Plaintiffs.[1] The Appearing Defendants refute Plaintiffs' contention, claiming the privileges for Exhibit 128 belong to only the memorandum's named recipients, KWBB and Excelsior. In support of their argument, they contend the attorney-client relationship between Mr. Scully and AMS–SD's owners was "sepa-rate and apart" from his relationship with AMS–SD. By extension they argue that Mr. Scully was not acting as AMS–SD's counsel at the time the memorandum was prepared and communicated. Therefore, the Appearing Defendants assert, because AMS–SD did not hold the privilege, it was not AMS–SD's, or by extension the bankruptcy trustee's, to waive.

The Court is not convinced by the distinction the Appearing Defendants seem to draw between Mr. Scully's relationships with AMS–SD, KWBB and Excelsior. Assuming the Appearing Defendants are correct, if the memorandum was communicated exclusively to KWBB and Excelsior (and by extension was not intended for AMS–SD) and, therefore, these two exclusively hold the privilege, how did Exhibit 128 end up in the AMS–SD files? No explanation is offered as to how Exhibit 128 came into AMS–SD's possession, or why, given the Appearing Defendants' argument above, such a disclosure would not waive KWBB or Excelsior's privilege. Assuming the privilege belonged to KWBB and Excelsior alone, then their disclosure of the memorandum to AMS–SD, as evidenced by its discovery in AMS–SD's files, would have resulted in a waiver of their right to claim the memorandum as privileged. See *Edison Elec. Light Co. v. United States Elec. Lighting Co.,* 44 F. 294, 298 (C.C.S.D.N.Y.1890) (a privilege holder's disclosure of an attorney-client privileged communication to a third party generally waives the privilege).

The Court believes a more reasonable explanation for the location of Exhibit 128 is that it came into AMS–SD's possession by virtue of the attorney-client relationship AMS–SD and its owners shared with Mr. Scully. This is reinforced by the fact the memorandum discusses the under-funding

---

1. See Section II.A. *infra.*

of AMS–SD retirement plans and the potential liability of various defendants in this action. Mr. Scully's declaration makes it clear that he represented the interests of AMS–SD, KWBB and Excelsior with regard to these issues. Thus, the Court concludes AMS–SD, KWBB and Excelsior jointly hold the attorney-client privilege attached to Exhibit 128.

### B. Exhibit 128 Is Also Subject to the Work–Product Doctrine

■ The work-product doctrine is a qualified immunity which protects from discovery documents and tangible things prepared by a party or that party's representative in anticipation of litigation. Fed. R.Civ.P. 26(b)(3). In order for lawyers to "act within the framework of our system of jurisprudence to promote justice and protect their client's interests," it is "essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

Because Exhibit 128 contains the mental impressions, conclusions, opinions and potential legal theories of counsel and was prepared in anticipation of this action, the Appearing Defendants contend it is subject to the work-product doctrine and, therefore, privileged. Plaintiffs do not dispute the attorney work-product status of the memorandum. However, Plaintiffs counter that Defendants have waived this privilege. The Court finds, therefore, in addition to the attorney-client privileges,

Exhibit 128 may also be protected under the work-product doctrine and turns its attention to consider whether the applicable privileges have been waived.

### II. Privileges Attached to Exhibit 128 Were Waived by AMS–SD and Stanley Kaufman Only

Plaintiffs assert any privileges attached to Exhibit 128 were waived by AMS–SD's bankruptcy trustee by way of the release of AMS–SD's files to Plaintiffs. Plaintiffs further argue Stanley Kaufman's deposition testimony that he relied on the advice of counsel while serving as a Plan trustee waives any privilege claims.[2] Lastly, Plaintiffs contend the Appearing Defendants' failure assert their privilege claim in response to document production requests and failure to act in a timely manner upon their discovery of the claimed inadvertent production of Exhibit 128 both served to waive any privilege claims.

### A. The Trustee Waived the Attorney–Client Privilege on Behalf of AMS–SD

■ It is a well established principle of law that a privilege holder's disclosure of an attorney-client privileged communication to a third party generally waives the privilege. See *Edison*, 44 F. at 298; See also *Samuels v. Mitchell*, 155 F.R.D. 195 (N.D.Cal.1994). Such a disclosure is viewed as an indication that confidentiality is no longer intended. *Edison*, 44 F. at 298. In the case at hand, however, the disclosure was not made by the party as-

---

**2.** The Court concurrently considered briefing and oral argument regarding Plaintiffs' motion to compel production of documents from Stanley Kaufman. As set forth in the Court's minute order of October 9, 2002, the Court determined Mr. Kaufman's assertion of reliance on advice of counsel waived his right to assert attorney-client and attorney work-product privileges relating to:

1. Mr. Kaufman's execution of the "Letter of Agreement;"
2. Mr. Kaufman's request(s) for administrative fees to be paid from the subject Plans, and;
3. Mr. Kaufman's payment of plan accounting fees using Plan assets.

In light of the ruling, the Court will not revisit the argument here.

816

serting the privilege, but rather by a bankruptcy trustee on that party's behalf. These circumstances raise a question of law as to whether the trustee in bankruptcy had the power to waive AMS–SD's privileges.

The issue as to whether a bankruptcy trustee can waive a privilege on behalf of an insolvent limited partnership has not been addressed in the Ninth Circuit. For guidance as to a bankruptcy trustee's power to control an estate's attorney-client privilege the Court turns to *Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), a U.S. Supreme Court case involving a similar question arising from a corporation's Chapter 7 proceedings. In *Weintraub,* the high court held the trustee of a corporation in bankruptcy has the authority to waive the corporation's attorney-client privilege with respect to pre-bankruptcy communications. *Id.* at 358, 105 S.Ct. 1986.

In reaching this holding, the Supreme Court enunciated several settled legal principles: a) in the case of a solvent corporation, the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors; b) when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well; and c) new managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors. *Id.* at 348–349, 105 S.Ct. 1986. Because in the absence of bankruptcy the attorney-client privilege is controlled by a corporation's management, the high court reasoned that when bankruptcy occurs, the actor whose duties most

closely resemble those of management should control the debtor corporation's privilege. *Id.* at 352—353, 105 S.Ct. 1986.

Against this background, the Supreme Court queried as to which of the corporation's "various actors ... is most analogous to the role played by management of a solvent corporation." *Id.* at 351, 105 S.Ct. 1986. The Court observed that all corporate property was transferred to a bankruptcy estate which was represented by a trustee. *Id.* at 352, 105 S.Ct. 1986. The trustee operated the business, was directed to investigate the debtors' financial activities, and was authorized to recover fraudulent or preferential transfers. *Id.* On the other hand, the debtors' directors retained no management powers. *Id.* Because the trustee's duties were most like those of management, the high court found the trustee would control the privilege. *Id.* at 353, 105 S.Ct. 1986.

The Fifth Circuit Court of Appeals applied the *Weintraub* decision to a case involving the waiver of an attorney-client privilege belonging to a limited partnership: See *United States v. Campbell,* 73 F.3d 44 (5th Cir.1996). In *Campbell,* a criminal defendant was the general partner of a limited partnership that filed for bankruptcy. The defendant was convicted of bankruptcy fraud for transferring funds out of the estate. He appealed his conviction, alleging evidence was improperly admitted because the bankruptcy trustee lacked the authority to waive the attorney-client privilege on the limited partnership's behalf. The Court of Appeals upheld the conviction reasoning "there is no logical reason to distinguish partnerships from corporations or other legal entities in determining the client a lawyer represents" and that "the rules regarding the attorney-client privilege of corporations are no less instructive when applied to a partnership." *Id.* at 47, citing *Hopper v. Frank,* 16 F.3d

92, 96 (5th Cir.1994); *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir.1994).

The Court concurs with the *Campbell* ruling. Like a corporation, a limited partnership is an inanimate entity that can act only through its agents. A solvent limited partnership is managed by its general partner, which has the power to direct the limited partnership's affairs and control its property. Except in cases of debtor-in-possession, when a limited partnership is in bankruptcy, the trustee steps into the shoes of the general partner and removes all power of the general partner to direct affairs and control property. In the case at hand, AMS–SD was not a debtor-in-possession. Rather, a trustee was appointed to manage AMS–SD's affairs during the bankruptcy proceeding. The powers and duties of a bankruptcy trustee are extensive.[3] Given the role of the trustee, it is logical the trustee's broad management powers include the authority to waive privileges held by the debtor limited partnership. Therefore, the Court finds by virtue of releasing AMS–SD's files to Plaintiffs, the trustee waived AMS–SD's attorney-client privilege with regard to the released documents.[4]

## B. The Trustee Waived the Work–Product Privilege on Behalf of AMS–SD

 Unlike the attorney-client privilege, the work-product privilege is not automatically waived by any disclosure to third persons. See *Samuels*, 155 F.R.D. at 200–201 (defendants did not waive work-product protection by disclosing documents to their own accounting firm). Rather, courts generally find a waiver only if the disclosure "substantially increases the opportunity for potential adversaries to obtain the information." *Id.* at 201, citing *In re Grand Jury*, 561 F.Supp. 1247, 1257 (E.D.N.Y.1982). Voluntary disclosure of attorney work product to an adversary in the litigation defeats the policy underlying the privilege. *Carter v. Gibbs,*

3. See *Weintraub*, 471 U.S. at 352, 105 S.Ct. 1986. Upon the commencement of a case in bankruptcy, the debtor's property passes to an estate represented by the trustee. 11 U.S.C. §§ 323, 541. "The trustee is 'accountable for all property received,' §§ 704(2), 1106(a)(1), and has the duty to maximize the value of the estate, see § 704(1); *In re Washington Group, Inc.*, 476 F.Supp. 246, 250 (M.D.N.C.1979), aff'd sub nom. *Johnston v. Gilbert*, 636 F.2d 1213 (4th Cir.1980), cert. denied, 452 U.S. 940, 101 S.Ct. 3084, 69 L.Ed.2d 954 (1981). He is directed to investigate the debtor's financial affairs, §§ 704(4), 1106(a)(3), and is empowered to sue officers, directors, and other insiders to recover, on behalf of the estate, fraudulent or preferential transfers of the debtor's property, §§ 547(b)(4)(B), 548. Subject to court approval, he may use, sell, or lease property of the estate. § 363(b). Moreover, in reorganization, the trustee has the power to· 'operate the debtor's business' unless the court orders otherwise. § 1108. Even in liquidation, the court 'may authorize the trustee to operate the business' for a limited period of time. § 721. In the course of operating the debtor's business, the trustee 'may enter into transactions, including the sale or lease of property of the estate' without court approval. § 363(c)(1). As even this brief and incomplete list should indicate, the Bankruptcy Code gives the trustee wide-ranging management authority over the debtor. See 2 Collier on Bankruptcy ¶ 323.01 (15th ed.1985)."

4. See also August 12, 1999, Order Approving Non–Contested Notice of Intended Action to Assign Claims. *In re American Medical Service of San Diego*, U.S. Bankruptcy Court for the So. District of California Case No. 98–06928–M7 (All claims for relief and causes of action arising out of an obligation for breach of contract, a violation of right of property, or wrong involving injury to personal property, which may exist in favor of AMS–SD's bankruptcy estate as to Stanley Kaufman, Dan Lynch, Mark Karlin, Robert Mayorga, James Calvin, Larry Ward, Robert Naify, and Ron C. White, were assigned by the trustee in bankruptcy to the members of the class action herein).

909 F.2d 1450, 1451 (Fed.Cir.1990). In these circumstances, the criteria for waiver of the work-product and attorney-client privileges are equivalent. *Id.*

In the case before this Court, a more clear example of an adversarial relationship can not exist. AMS–SD had been named as a defendant in this lawsuit when AMS–SD's trustee in bankruptcy voluntarily relinquished the files to Plaintiffs. Therefore, AMS–SD, through the bankruptcy trustee, has clearly also waived its work-product privilege with regard to Exhibit 128.

### C. Stanley Kaufman's Waiver Does Not Extend to KWBB or Excelsior

■ During his deposition, Stanley Kaufman testified he relied on advice of counsel with respect to certain actions he took while serving as a trustee for the Plan. The Court has ruled Stanley Kaufman's reliance on counsel has waived his right to assert privileges with regard to these issues. See *fn. 1 supra.* The question not raised in that motion, but now before the Court, is whether Stanley Kaufman's waiver of attorney-client and attorney work product privileges serves as a waiver on behalf of KWBB or Excelsior with regard to Exhibit 128.

An officer or employee of a corporation may assert or waive privileges on behalf of the corporation. See *Upjohn,* 449 U.S. at 395, 101 S.Ct. 677. Stanley Kaufman was an employee of AMS–SD and a trustee for the Plan. He denies having any working relationship with either KWBB or Excelsior during the relevant time period. Plaintiffs did not proffer any evidence to the contrary. Therefore, in consideration of the fact Stanley Kaufman had neither an employment nor managerial relationship with KWBB or Excelsior during the time in question, the Court does not find any

evidence to support Plaintiffs' claim that Stanley Kaufman's waiver of attorney-client and attorney work product privileges extends to either KWBB or Excelsior.

### D. Attorney–Client and Work Product Privileges Were Not Waived by KWBB or Excelsior

■ Exhibit 128 was not produced directly by either KWBB or Excelsior. Rather, the three page memorandum was located in one of ninety boxes that were released by the bankruptcy trustee to Mr. Lucal. The majority of the documents in those boxes are described as general business documents for AMS–SD. Exhibit 128 appears to be the only document in those boxes for which a privilege is asserted. Although counsel for the Appearing Defendants had the opportunity to review a portion of these documents prior to their production, a significant number of files were released directly to Plaintiffs by the bankruptcy trustee. It is not clear whether Exhibit 128 was located in the boxes that were released directly to Plaintiffs or in those that were reviewed by counsel for the Appearing Defendants. Given the Appearing Defendants' limited involvement, if any, in the release of Exhibit 128 or the remainder of the files, their conduct in connection with the disclosure could, at most, be characterized as inadvertent.

■ In cases involving inadvertent disclosure of attorney-client or work-product privileged documents the court considers (1) the reasonableness of precautions taken to prevent disclosure, (2) the time taken to rectify error, (3) the scope of discovery, (4) the extent of disclosure, and (5) the overriding issue of fairness. *Hartford Fire Ins. Co. v. Garvey,* 109 F.R.D. 323 (N.D.Cal.1985). Inadvertent disclosure of privileged documents may be excused when the disclosure is reasonable in

light of all the surrounding facts, the number and extent of disclosure is small in comparison to the scope of discovery, and the party asserting the privilege promptly asserts a remedy to the disclosure. *KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 919.

Plaintiffs' counsel represents he discovered the memorandum in October 2001 in the files that were released by the bankruptcy trustee. The fact the memorandum was in Plaintiffs' custody first came to the Appearing Defendants' attention during the deposition of Stanley Kaufman on December 4, 2001. At that time Stanley Kaufman's counsel, Mr. Wood, questioned Mr. Lucal about how he came into possession of the document. Mr. Lucal represented it had been produced during the litigation by "Schector's office," implying it had been produced by counsel for the remaining Appearing Defendants. Ms. Nickerson, an attorney with Mr. Schector's office, contacted Mr. Lucal nine days later, indicating the firm had just learned of the events at the deposition. Ms. Nickerson then requested Mr. Lucal return the memorandum, claiming it had been inadvertently produced and was attorney-client privileged. Mr. Lucal refused and counsel continued to meet and confer through an exchange of correspondence during December regarding the memorandum. In January 2002, the parties agreed to stay discovery in order to facilitate settlement discussions. At about that time correspondence regarding the memorandum also ceased. While the stay was in effect, Plaintiffs filed their Fifth Amended Complaint, setting forth portions of the memorandum verbatim. The Appearing Defendants' Answer includes an affirmative defense in which they again assert their attorney-client privilege and request the privileged portions of the pleading be stricken. The discovery stay remained in effect until it was lifted by this Court in late July 2002. Three weeks after the stay was lifted, the Appearing Defendants again corresponded with Plaintiffs' counsel and requested the memorandum's return.

Plaintiffs now contend the Appearing Defendants waived any privilege by failing to act in a timely manner upon discovering Plaintiffs' possession of Exhibit 128. Given the number of documents that were produced to Plaintiffs, the Appearing Defendants' limited role in the documents' production, and their timely and repeated objections to Plaintiffs' possession of Exhibit 128, the Court is not persuaded by Plaintiffs' position. Moreover, given their ongoing and persistent attempts to recover the memorandum, the Court concludes that the Appearing Defendants acted reasonable and timely in their privileges. Further, given the circumstances described above, Plaintiffs could not reasonably believe the Appearing Defendants intended to waive, or waived by lack of diligence, any privileges it held with regard to Exhibit 128.

Plaintiffs also argue that Appearing Defendants waived privileges attached to Exhibit 128 by failing to raise a claim of privilege in responses to document production requests. A party claiming privilege in response to a discovery request must describe what is privileged in a manner sufficient to enable other parties to assess the applicability of the claimed privilege. Fed. R. Civ. Proc. 26(b)(5). The failure to claim privilege in written discovery responses constitutes a waiver. *Marx v. Kelly, Hart & Hallman*, 929 F.2d 8, 10—11 (1st Cir.1991).

Plaintiffs propounded document production requests to Stanley Kaufman and James Kaufman. In these requests Plaintiffs sought categories of documents that would have included Exhibit 128, assuming

Exhibit 128 was in the possession of these Defendants. While it is true that neither Stanley Kaufman nor James Kaufman asserted a privilege claim in response, the Court does not construe this to be a waiver on behalf of KWBB or Excelsior. Neither KWBB nor Excelsior were the recipients of document production requests that encompass Exhibit 128. Accordingly, the Court finds they have not waived any privileges by failing to assert them in response to Plaintiffs' discovery requests.

Based on the foregoing, the Court finds neither KWBB nor Excelsior waived any privileges as to Exhibit 128.

### CONCLUSION

In sum, the Court finds: (1) attorney-client and work product privileges attached to Exhibit 128 have been waived by AMS–SD and Stanley Kaufman; and (2) attorney-client and work product privileges attached to Exhibit 128 have not been waived by either KWBB or Excelsior. The Appearing Defendants' motion is, therefore, GRANTED as to Defendants KWBB and Excelsior, and DENIED as to Defendants AMS–SD and Stanley Kaufman. All reference to Exhibit 128 shall be stricken from Plaintiffs' Fifth Amended Complaint. (See Minute Order of December 20, 2002).